**SUPERIOR EQUIPMENT COMPANY, INC., Plaintiff/Appellant,**

v.

**MARYLAND CASUALTY COMPANY, Northern Insurance Company of New York, Safety National Casualty Corporation, TIG Insurance Company, formerly Transamerica Insurance Company, and American Alliance Insurance Company, Defendants/Respondents.**

No. 73559.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 15, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 1999.

---

1. This regulation became effective September 1, 1997, after White's arrest but prior to his trial.

Lewis C. Green, St. Louis, for appellant.

Jeffrey L. Cramer, T. Michael Ward, Brown & James, P.C., St. Louis, for respondent.

ROBERT G. DOWD, Jr., Chief Judge.

Superior Equipment Company, Inc. (Superior) appeals from the trial court's grant of summary judgment in favor of Maryland Casualty Company (Maryland), Northern Insurance Company of New York (Northern), Safety National Casualty Corporation (Safety), TIG Insurance Company (TIG) (formerly Transamerica Insurance Company), and American Alliance Insurance Company (American) (collectively referred to as the insurers) in a declaratory judgment action. Superior argues the trial court erred in granting summary judgment in that the insurers had a duty to defend Superior because the complaint in the underlying federal action alleges facts stating a claim potentially within the coverage of the comprehensive general liability policies issued by Maryland and Northern, the umbrella policies issued by Maryland and Safety, and the business automobile policies issued by American and TIG. Superior further contends the issue of whether the insurers have a duty to indemnify Superior under those policies is not ripe. We reverse and remand in part and affirm in part.

## I. Facts and Procedural History

From November 1982 to August 1988, Superior transported hazardous substances to a waste disposal facility known as the Wastex Research, Inc. (the Wastex site) in East St. Louis, Illinois. Wastex accepted waste solvents, painting inks, waste oils, and other substances from off-site facilities and blended some of the substances into supplemental fuel for industrial customers. Wastex stored on-site thousands of drums and containers of waste in several-dozen buildings and hundreds of thousands of gallons of waste in tanks.

In May 1989, the Illinois Environmental Protection Agency (IEPA) issued a Notice pursuant to the Illinois Environmental Protection Act, Ill.Rev.Stat.1987, ch. 111½, par. 1004(q). The Notice named numerous companies, including Superior, as potentially responsible parties with regard to the hazardous conditions at the Wastex site. To respond to the Notice, approximately 250 companies formed the Wastex Joint

Steering Committee (Wastex Committee), an unincorporated association. Superior and another company identified in the IEPA Notice declined to respond to the Notice and to join Wastex Committee.

In October 1993, Wastex Committee filed a lawsuit against Superior in the United States District Court for the Eastern District of Missouri (underlying federal action). Pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA), Wastex Committee sought to recover from Superior the "response costs" it had incurred or would incur in the future to clean up hazardous substances which Superior allegedly transported and deposited at the Wastex site. Among other allegations, Paragraph 17 of the federal complaint alleges:

> Releases which have occurred or are threatened to occur at the facility include but are not limited to spills from bulk tanks, leaking drums and tanks, and explosions and resultant leaking from tanks. These releases and others have contaminated and continue to contaminate or threaten to contaminate the environment at the Wastex site.

During the time period pertinent to the underlying federal action, the insurers had issued nine separate policies insuring Superior. Although each policy used somewhat different language, the insurers in essence agreed to defend any action seeking damages against Superior for property damage covered by the relevant policy. Through their policies, the insurers also agreed to indemnify Superior for damages it was legally obligated to pay for such property damage. The policies excluded from coverage property damage caused by the discharge or escape of pollutants, unless such discharge was "sudden and accidental." Superior submitted to the insurers the claims raised by Wastex Committee in the underlying federal action to the insurers. Superior requested each insurer to defend Superior in the federal action and to acknowledge coverage of any judgment Wastex Committee might obtain against Superior. The insurers refused to defend and denied any coverage under their respective policies.

In April 1994, Superior filed a declaratory action against Maryland, Northern, Safety, American, and TIG seeking a declaration of its rights under the various insurance policies. Specifically, Superior asked the trial court to declare the insurers had a duty under the various policies to defend Superior in the underlying federal action (Count I) and to indemnify Superior against any liability in the underlying federal action (Count II). The trial court denied Superior's motion for summary judgment and granted the insurers' motions to dismiss with prejudice. This court reversed that trial court's decision on the grounds a motion to dismiss is an improper method for ruling on the merits of a declaratory judgment action. *See Superior Equipment Co. v. Maryland Casualty Co.*, 936 S.W.2d 190 (Mo.App. E.D.1996).

On remand, Superior renewed its motion for summary judgment on Count I, regarding insurers' duty to defend. The insurers also filed separate cross-motions for summary judgment on Count I, the duty to defend, and Count II, the duty to indemnify. The trial court granted the insurers' motions and entered summary judgment in favor of the insurers on both counts. This appeal followed.

## II. Choice of Law

We first address the issue of whether to apply Missouri law or Illinois law. Missouri choice of law rules follow the "most significant relationship" test of the Restatement (Second) of Conflicts of Laws, Section 188. *Protective Casualty Ins. Co. v. Cook*, 734 S.W.2d 898, 905 (Mo.App. E.D.1987). This test requires a balancing of several factors to determine which state has the most significant relationship to the action. *Id.* These factors include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.; Bonner v. Automobile Club Inter–Insurance Exchange*, 899 S.W.2d 925, 929 (Mo.App. E.D.1995). In cases involving surety or casualty insurance, as the present case, the most important fac-

tor is the state which the parties contemplated as the principal location of the insured risk. *Hartzler v. American Family Mut. Ins. Co.*, 881 S.W.2d 653, 655 (Mo.App. W.D. 1994); Restatement (Second) of Conflicts of Laws, Section 193. Comment b to Section 193 describes the principal location of the insured risk as "the state where it will be during at least the major portion of the insurance period" and states that in cases of automobile liability policy, it is where the vehicle will be garaged during most of the period. *Id.*

■ Superior contends Illinois law governs the interpretation of the insurance policies because the contamination at the Wastex site is located in Illinois and therefore, Illinois has the most significant relationship to the action. We disagree.

The principal location of the insured risk is Missouri because Missouri is the state where Superior was during the major portion of the insured period. The business automobiles operated and were garaged in Missouri. Superior is a Missouri corporation and its principal place of business is in Missouri. Further, the Maryland and Northern policies were negotiated through a Missouri broker and executed in Missouri. The Safety umbrella policy was also negotiated and executed in Missouri. The TIG policy was issued to Superior at Superior's mailing address in Missouri. The American and TIG business automobile policies covered vehicles registered in Missouri. The only factor favoring application of Illinois law is the location of the Wastex site in Illinois. Because Missouri has the most significant relationship under the Restatement factors, we will apply Missouri law.

### III. Standard of Review

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. 1993). The propriety of summary judgment is a question of law and therefore our review is essentially de novo. *Id.* We affirm the judgment of the trial court if the record demonstrates the prevailing party has shown that he or she is entitled to judgment as a matter of law and there is no genuine issue of the material fact which would require a trial. *Id.* at 378.

### IV. Duty to Defend

#### A. Comprehensive General Liability Policies

Superior argues the trial court erred in granting Maryland and Northern's motions for summary judgment because the complaint in the underlying federal action alleges facts which state a claim potentially within the coverage of the comprehensive general liability policies and therefore those insurers have a duty to defend. We agree.

The primary comprehensive general liability policies issued by Maryland and Northern provide in relevant part:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of...property damage to which this insurance applies, caused by an occurrence...and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such...property damage...
>
> . . .
>
> This insurance does not apply
>
> . . .
>
> ...to property damage arising out of the discharge, dispersal, release or escape of...pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

A liability insurer's duty to defend its insured is determined by comparing the provisions of the liability policy with the allegations of the complaint filed against the insured. *McDonough v. Liberty Mut. Ins. Co., Inc.*, 921 S.W.2d 90, 93 (Mo.App. E.D. 1996). If the complaint alleges facts which state a claim potentially or arguably within the policy's coverage, there is a duty to defend. *Id.; Bonner*, 899 S.W.2d at 929; *Luyties Pharmacal Co. v. Frederic Co.*,

*Inc.,* 716 S.W.2d 831, 835 (Mo.App. E.D. 1986). The presence of some potentially insured claims in complaint gives rise to a duty to defend, even though claims beyond coverage may also be present. *Scottsdale Ins. Co. v. Ratliff,* 927 S.W.2d 531, 534 (Mo. App. E.D.1996).

■ The complaint in the underlying federal action alleges releases which have occurred at the Wastex site "including but not limited to spills from bulk tanks, leaking drums and tanks, and explosions and resultant leaking from tanks." Notably in federal court the complaint need only put the other party on notice of potential claims. Rule 8(a), F.R.Civ.P. The allegation of explosions and resultant leaking arguably falls within the "sudden and accidental" releases required by the policies. The underlying federal complaint sufficiently alleges facts stating a claim potentially within the policies' coverage.

■ Maryland and Northern, as well as the other insurers, argue, however, the duty to defend is also determined by reference to the pleadings in the underlying federal action and by facts known or which could have been discovered by the insurer from a reasonable investigation. We agree that actual facts known or ascertainable at the commencement of the suit may also be considered. *See Standard Artificial Limb, Inc. v. Allianz Ins. Co.,* 895 S.W.2d 205, 210 (Mo.App. E.D. 1995); *Zipkin v. Freeman,* 436 S.W.2d 753, 754 (Mo. banc 1968). However, this does not help Maryland and Northern avoid the duty to defend here.

■ Maryland and Northern argue the "pollution exclusion" contained in the policies applies to preclude Superior's cause of action. When an insurance company seeks to escape coverage based on policy exclusions, the burden is on it to establish the applicability of the exclusions. *American Family Mutual Ins. Co. v. Copeland–Williams,* 941 S.W.2d 625, 627, (Mo.App. E.D.1997). Maryland and Northern argue the complaint in the underlying federal action is based on the IEPA Notice alone and the Notice does not support

any claim potentially within coverage of their policies. The IEPA Notice cites one explosion that occurred a year prior to Superior's first delivery to the Wastex site and outside the policies' coverage periods. Relying solely on the IEPA Notice, Maryland and Northern contend the "pollution exclusion" in the policies applies to preclude coverage because there were no sudden and accidental releases during the policies' coverage periods.

While the IEPA Notice is referenced in the complaint in the underlying federal action, we find no indication that the complaint is confined to the IEPA Notice alone. Further, we note discovery was stayed in the underlying federal complaint before Superior could discover all the facts upon which the complaint was based. There has not been a reasonable investigation as to all the facts supporting the underlying federal action.[1]

■ Maryland and Northern also seek denial of coverage based on the coverage language of the policies themselves. The pertinent language of the policies states these insurers shall pay damages "because of...property damage...to which the insurance applies." Maryland and Northern argue no "property damage" as defined by the policies took place "during the policy period." "Property damage" is defined as "physical injury to or destruction of tangible property which occurs during the policy period."

The federal complaint alleges "releases which have occurred or are threatened to occur," and which call for a "response action," including "removal of the existing waste inventory as well as cleaning the bulk storage tanks, drum storage areas, and site sewer system and excavating visually impacted areas of soil." Maryland and Northern Insurance contend there are no allegations of covered "property damage" because the response action applies to actual releases as well as threatened releases and such threatened releases are not covered "property damage" which occurred "during the policy period." Maryland and Northern again rely solely on the IEPA Notice to argue no prop-

---

**1.** If additional facts are ascertained which show that the underlying action is not within coverage

of the policies, the insurers are not obligated to afford a defense. *Standard,* 895 S.W.2d at 210.

erty damage occurred during the policy period.

■ Again, we look to the allegations in the complaint of the underlying federal action. The federal complaint alleges actual releases have occurred and calls for excavation of "visually impacted areas of soil." Although the underlying federal complaint does not identify specific dates of alleged releases, the time frame alleged in the federal complaint for the property damage includes the periods of coverage of these policies. The underlying federal complaint alleges facts of "property damage" that potentially occurred "during the policy period."

■ Maryland and Northern, as well as the other insurers, further argue the response costs alleged in the federal complaint are not "damages because of...property damage" as required by the policies. Maryland and Northern contend the response costs are prophylactic and preventative in nature instead of being damages. We disagree.

Environmental response costs are damages covered under liability insurance contracts. *Farmland Industries, Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. banc 1997); *Brown Group, Inc. v. George F. Brown & Sons, Inc.,* 963 S.W.2d 285, 287 (Mo.App. E.D.1997). The response costs alleged in the federal complaint include "removal of the existing waste inventory as well as cleaning the bulk storage tanks, drum storage areas, and site sewer system and excavating visually impacted areas of the soil." The costs of excavating "visually impacted areas of the soil" are not prophylactic or preventative. The response costs alleged include damages covered under the policies.

We find the complaint in the underlying federal action sufficiently alleges facts which state a claim potentially within the coverage of the policies. Therefore, the trial court's grant of summary judgment in favor of Maryland and Northern is reversed.

### B. Umbrella Liability Policies

Superior also argues the trial court erred in granting Maryland and Safety's motions for summary judgment for the reason that the complaint in the underlying federal action alleges facts which state a claim potentially within the coverage of those insurers' umbrella policies. Therefore, Superior contends these insurers have a duty to defend. We agree.

The Maryland umbrella liability policy provides in relevant part:

3.1 COVERAGES. The Company will indemnify the Insured for ultimate net loss in excess of the retained limit which the Insured...shall become legally obligated to pay as damages because of...Property Damage Liability...to which this policy applies, caused by an occurrence.

3.2 DEFENSE, SETTLEMENT, AND SUPPLEMENTARY PAYMENTS. (a)...the Company will, in addition to the amount of the ultimate net loss payable: (1) defend any suit against the Insured seeking damages on account of...property damage...even if any of the allegations of the suit are groundless, false or fraudulent.

The Safety umbrella liability policy provides in relevant part:

The Corporation will pay on behalf of the Insured for ultimate net loss in excess of the retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of...B. property damage...to which this insurance applies, caused by an occurrence, and...

The Corporation will a) have the right and duty to defend any suit against the Insured seeking damages on account of such ... property damage ... even if any of the allegations of the suit are groundless, false or fraudulent.

Both policies contain a pollution exclusion stating:

This policy does not apply

. . .

to...property damage arising out of the discharge, dispersal, release or escape of...pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Maryland and Safety present the same arguments under the umbrella policies as the comprehensive general liability insurers presented. As explained above, the complaint in the underlying federal action seeks damages because of property damage and alleges sudden and accidental releases within the policies' coverage. We find the federal complaint alleges facts which state a claim potentially within the coverage of the umbrella policies.

■ However, Safety further argues Superior has failed to establish (1) that the limits of liability of the underlying insurance have been exhausted because of property damage during the policy period; and (2) that the underlying insurers no longer have a legal obligation to defend in order for the umbrella policy to attach.

■ Before the umbrella policy provides coverage for property damage, the underlying insurance must be available to pay the full limits of liability. *See Haggard Hauling & Rigging Co., Inc. v. Stonewall Ins. Co.*, 852 S.W.2d 396, 399 (Mo.App. W.D.1993). Here the underlying insurance policies of Maryland and Northern are available to pay the limits of potential liability. The underlying federal action seeks a judgment against Superior, jointly and severally, for millions of dollars, plus additional expenses to be incurred in the future. Superior's underlying policy limits for property damage total less than $1.5 million.

We find the complaint in the underlying federal action sufficiently alleges facts which state a claim potentially within the coverage of the policies. Therefore, the trial court's grant of summary judgment in favor of Maryland and Safety is reversed.

### C. Business Automobile Liability Policies

■ Superior further argues the trial court erred in granting American and TIG's motions for summary judgment because the underlying complaint alleges facts which state a claim potentially within the coverage of their business automobile policies and therefore the insurers have a duty to defend. We disagree.

The American and TIG automobile policies provide in relevant part:

1. We will pay all sums the insured legally must pay as damages because of...property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

2. We have the right and duty to defend any suit asking for these damages.

This insurance does not apply to:

. . .

9...property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental.

Nowhere in the complaint in the underlying federal action is there any allegation that the contamination resulted from the ownership, maintenance or use of a covered auto. There are no allegations the releases were caused by any particular feature, malfunction or improper operation of Superior's business automobiles. Although we read the federal complaint broadly, there are no facts alleged which are within the coverage of the business automobile policies issued by American and TIG. Thus, American and TIG have demonstrated that there are no material facts in dispute as to its duty to defend Superior and therefore summary judgment was appropriate. The trial court's grant of summary judgment in favor of American and TIG is affirmed.

### V. Duty to Indemnify

■ Finally, Superior contends the issue of whether the insurers have a duty to indemnify is not ripe for review. Superior argues where the controlling facts are unknown and the duty to defend arises out of potential coverage, resolution of the duty to indemnify must await the facts. We agree.

An insurer's duty to defend is broader than its duty to indemnify. *Millers Mut. Ins. Ass'n of Illinois v. Shell Oil Co.*, 959 S.W.2d 864, 869 (Mo.App. E.D.1997). If there is no duty to defend, it follows there is no duty to indemnify. *Id.*, at 868. An insurer has a duty to defend claims falling within

the ambit of the policy even if it may not ultimately be obligated to indemnify the insured. *Id.* at 871.

 The facts might be decided in one manner in the declaratory judgment action, and differently in the underlying federal action. It would be premature to entertain jurisdiction of a declaratory judgment action for the duty to indemnify before it can be known whether or not the loss would be covered by the policies. *See Com. Ins. Agency, Inc. v. Arnold,* 389 S.W.2d 803, 808 (Mo. 1965); *Missouri Health Care Ass'n v. Attorney General of the State of Mo.,* 953 S.W.2d 617, 621 (Mo. banc 1997).

We find the issue of the duty to indemnify is not ripe as to Maryland, Northern, and Safety. Further, we find there is no duty to indemnify on the part of American and TIG because these insurers have no duty to defend.

## VI. Conclusion

There are material issues of fact in dispute, and therefore the judgment of the trial court granting summary judgment is reversed and remanded on the duty to defend under Maryland's comprehensive general liability policy, Northern's comprehensive general liability policy, Maryland's umbrella policy, and Safety's umbrella policy. The issue of the duty to indemnify is not ripe as to these insurers and thus the judgment for these insurers on that issue is reversed.

The judgment of the trial court is affirmed as to the granting of summary judgment on the duty to defend and the duty to indemnify for American and TIG's business automobile policies.

Reversed and remanded in part and affirmed in part.

KAROHL, J., and CRIST, Senior Judge, concur.