# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1802

———————

| | | |
|---|---|---|
| Interstate Bakeries Corporation, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| OneBeacon Insurance Company, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: November 15, 2011
Filed: July 24, 2012

———————

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

———————

GRUENDER, Circuit Judge.

Interstate Bakeries Corporation ("IBC")[1] appeals the district court's[2] order holding that OneBeacon Insurance Company ("OneBeacon"), IBC's insurer, does not have a duty to defend IBC in a suit brought by Flowers Bakeries Brands, Inc. ("Flowers"). For the reasons that follow, we affirm.

———————

[1]IBC changed its name to Hostess Brands, Inc. on November 2, 2009.

[2]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri, to whom the case was referred by consent of the parties pursuant to 28 U.S.C. § 636(c).

# I. BACKGROUND

The central question in this case is whether OneBeacon has a duty to defend IBC in an action ("underlying litigation") that Flowers brought against IBC. According to the complaint in the underlying litigation ("Flowers Complaint"), Flowers produces and markets "fresh breads and buns under the NATURE'S OWN trademark." Flowers claims that the Nature's Own mark has "significant fame and public recognition," "tremendous power as a source identifier," "commercial magnetism and good will," and "positive associations and prestigious connotations." The Flowers Complaint further alleges that IBC "is using or preparing to use, or has stated an intent to use and otherwise promoted, the NATURE'S PRIDE and NATURE'S CHOICE trademarks in connection with packaged breads, which marks are confusingly similar to Flowers'[s] NATURE'S OWN trademark." Ultimately, the Flowers Complaint asserts five specific counts against IBC: (1) federal trademark infringement, (2) federal unfair competition, (3) state trademark dilution, (4) common law and state unfair competition, and (5) unfair and deceptive trade practices.

IBC maintained an "Advertiser Advantage" insurance policy with OneBeacon that provided coverage for loss resulting from "**claims** arising from an **occurrence** committed by the **insured** during the **policy term** in or for **scheduled advertising** and arising from" any of seven enumerated grounds.[3] IBC submits that the following two grounds are applicable here: "(5) infringement of **title** or slogan" and "(6) unfair competition and **claims** under Section 43(a) of the Lanham Act or similar state statutes" when alleged with a cause of action set forth under ground (5). The policy excluded from coverage claims "for or arising from infringement or dilution of trademark, trade name, trade dress, service mark or service name or unfair

---

[3]The terms in bold font are defined in the policy; we provide the applicable definitions as relevant.

competition arising therefrom," with the explicit proviso that "this exclusion shall not apply to **claims** for infringement of **title** or slogan."

After OneBeacon refused to defend IBC in the underlying lawsuit, IBC initiated this action seeking a declaration that OneBeacon has a duty to defend IBC. IBC filed a motion for partial summary judgment, arguing that "Nature's Own" is a "slogan" and a "title" under the policy. The district court rejected IBC's contentions and denied IBC's motion. The court then entered a judgment in favor of OneBeacon because the parties agreed that the court's construction of the policy in its order denying IBC's motion for summary judgment resolved all of the issues IBC raised in the action. IBC appeals the adverse judgment and the district court's underlying order denying its motion for summary judgment. We affirm the judgment that OneBeacon does not have a duty to defend IBC in the underlying litigation because we conclude that the Flowers Complaint failed to allege facts that would indicate the trademarked phrase "Nature's Own" is potentially a "title" or a "slogan" and that the record in this case is insufficient to establish what a reasonable investigation by OneBeacon would have revealed about Flowers's use of the "Nature's Own" trademark.

## II. DISCUSSION

We review *de novo* the district court's underlying order denying IBC's motion for summary judgment. *See Myers v. Lutsen Mountains Corp.*, 587 F.3d 891, 892 (8th Cir. 2009). "We may affirm the judgment of the district court 'on any basis disclosed in the record, whether or not the district court agreed with or even addressed that ground.'" *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 591 (8th Cir. 2011) (quoting *PFS Distribution Co. v. Raduechel*, 574 F.3d 580, 591 (8th Cir. 2009)). In a diversity action such as this, "[s]tate law governs the interpretation of insurance policies," *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012), and the parties agree that Missouri law controls, *see*

*Kaufmann v. Siemens Med. Solutions USA, Inc.*, 638 F.3d 840, 843 (8th Cir. 2011). "If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Eubank v. Kan. City Power & Light Co.*, 626 F.3d 424, 427 (8th Cir. 2010).

"The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* at 170-71. In addition, an insurer cannot "merely rest upon the allegations contained within the petition." *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 392 (Mo. Ct. App. 2007). Rather, the insurer should also consider "other facts it knew, or could have learned from a 'reasonable investigation' at the time the lawsuit was filed." *Secura Ins.*, 670 F.3d at 861 (quoting *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 42 (Mo. Ct. App. 2007)). The duty to defend "is to be determined from the cause of action pleaded, at the time the action is commenced, not from what [a later] investigation or a trial of the case may show the true facts to be." *Trainwreck*, 235 S.W.3d at 39 (emphasis omitted) (quoting *Inter-State Oil Co. v. Equity Mut. Ins. Co.*, 183 S.W.2d 328, 332 (Mo. Ct. App. 1944)). In determining whether there is a duty to defend, a court is barred from "reading into [a complaint] any factual assumptions." *See Penn-Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 599 (Mo. Ct. App. 2010).

The insured, IBC, bears the burden of proving coverage, and the insurer, OneBeacon, has the burden of showing that an exclusion from coverage applies. *See Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 80 (Mo. Ct. App. 2005). "To extricate itself from a duty to defend a suit against the insured, the insurer must demonstrate that there is no possibility of coverage." *Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am.*, 295 S.W.3d 557, 561 (Mo. Ct. App. 2009).

"The presence of some insured claims in the underlying suit gives rise to a duty to defend, even though uninsured claims or claims beyond the coverage may also be present." *Lampert v. State Farm Fire & Cas. Co.*, 85 S.W.3d 90, 93 (Mo. Ct. App. 2002).

"The interpretation of an insurance policy is a question of law." *McCormack*, 989 S.W.2d at 171. We must "ascertain the intention of the parties and . . . give effect to that intention." *Secura Ins.*, 670 F.3d at 861 (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973)). The intention of the parties "is presumptively expressed by the 'plain and ordinary meaning' of the policy's provisions," *id.* (quoting *Mo. Emp'rs Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 625 (Mo. Ct. App. 2004)), "which are read 'in the context of the policy as a whole,'" *id.* (quoting *Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998)).

Because IBC asserts that OneBeacon has a duty to defend IBC under policy provisions relating only to infringement of titles and slogans, IBC only succeeds if, given the record in this case, the phrase "Nature's Own" is potentially a "title" or a "slogan" under the policy. IBC contends that the phrase "Nature's Own" constitutes both a "title" and a "slogan." We address each contention in turn.

## A.    Infringement of a Title

IBC argues that the phrase "Nature's Own" is the title of the wrappers in which Flowers packages its bread products and that the Flowers Complaint alleging infringement of the "Nature's Own" trademark therefore alleges infringement of a title for which the policy provides coverage. The policy defines "title" as the "caption or name of **matter**." We look to the dictionary definition of "caption" and "name" because those words are not defined in the policy. *See Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 708 (Mo. 2011). As relevant to the facts of this case, "caption" is defined as "the heading esp[ecially] of an article or document,"

-5-

*Merriam-Webster's Collegiate Dictionary* 184 (11th ed. 2005), and "name" is "a word or phrase that constitutes the distinctive designation of a person or thing," *id.* at 823. The policy defines "matter" in part as "any communication, regardless of its nature or form, including but not limited to **advertising**, . . . creative expression, [and] data," where "advertising" is defined in part as "**advertising**, publicity, [and] press releases or promotion of the **insured's** services or products . . . ."

We assume without deciding that, as IBC contends, Flowers's bread packaging is a "matter" under the policy and that the trademarked phrase "Nature's Own" could be used as a "title" of the bread wrappers. Even with these assumptions, however, we hold that neither the allegations in the Flowers Complaint nor the record as to facts known or reasonably ascertainable to OneBeacon when the claim was filed give rise to a claim potentially within the policy's coverage for infringement of a title. *See Farr v. Farm Bureau Ins. Co. of Neb.*, 61 F.3d 677, 682 (8th Cir. 1995) (assuming without deciding that the injuries alleged constituted "advertising injury" under the policy but finding that the insurance companies had no duty to defend because the record did not contain evidence to support the conclusion that the activities of the parties seeking a defense constituted the requisite "advertising").

As an initial matter, the lack of a count or allegation in the Flowers Complaint that includes the phrase "infringement of a title" is not fatal to IBC's argument that the Flowers Complaint potentially gives rise to a claim for infringement of a title. *See McCormack*, 989 S.W.2d at 170. To determine whether "Nature's Own" is potentially a "title" under the policy, we must consider the manner in which the phrase is allegedly used or, to the extent known or reasonably ascertainable to OneBeacon, actually used. *See id.*; *see also Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 556 (6th Cir. 2003) (determining whether the relevant phrase, as used in actual advertisements, potentially constituted a "slogan" under the insurance policy). In response to IBC's assertion that "Nature's Own" is the title of Flowers's bread wrappers, OneBeacon argues that "there is no 'Nature's Own' bread wrapper

in the record and, therefore, there are no facts to support IBC's argument." Although the bread wrappers likely would have been reasonably ascertainable to OneBeacon, IBC does not direct us to any depiction or description of the wrappers in the record that would allow us to determine whether the phrase "Nature's Own" is printed on the bread packaging in a manner that would make it "potentially" qualify as a "title." Without information in the record about the content of what was known or reasonably ascertainable to OneBeacon, we must simply rely on the Flowers Complaint. IBC states that the Flowers Complaint "specifically alleges its use of 'Nature's Own' 'in connection with [its] "packaged breads[,]"['] . . . implying that the words are on the bread packaging." IBC further contends that "[t]he reasonable inference from Flowers'[s] assertion that it 'markets' its breads 'under the Nature's Own trademark' . . . is that Flowers'[s] marketing materials are captioned with the phrase (or named) 'Nature's Own.'" The question is thus how much we may infer about the potential use of the trademark on Flowers's packaging.

Although Missouri law favors insured parties by determining an insurer's duty to defend based on whether certain facts "give rise to a claim *potentially* within the policy's coverage," *see McCormack*, 989 S.W.2d at 170 (emphasis added), use of the word "potentially" does not render boundless the duty to defend. The limits of the inferences we may draw from factual allegations in the underlying complaint are illustrated in *Superior Equipment Co. v. Maryland Casualty Co.*, 986 S.W.2d 477 (Mo. Ct. App. 1998). Superior Equipment Company was insured by multiple policies and sought coverage after a committee of potentially responsible companies "sought to recover from Superior the 'response costs' it had incurred or would incur in the future to clean up hazardous substances which Superior allegedly transported and deposited" at a certain location. *Id.* at 479-80. The committee alleged in its complaint that "[r]eleases which have occurred or are threatened to occur at the facility include but are not limited to spills from bulk tanks, leaking drums and tanks, and explosions and resultant leaking from tanks." *Id.* at 480. Some of the insurance policies provided coverage to Superior for situations in which it was obligated to pay

for property damages, but those policies included an exclusion for property damage arising from the dispersal or escape of pollutants. *Id.* at 481. However, those policies excepted from the exclusion situations in which such dispersal or escape is "sudden and accidental." *Id.* The court concluded that the allegation in the complaint "of explosions and resultant leaking arguably falls within the 'sudden and accidental' releases required by the policies." *Id.* at 482.

In contrast, another policy provided coverage for property damages "caused by an accident and resulting from the ownership, maintenance or use of a covered auto." *Id.* at 484. The court analyzed whether the insurance company had a duty to defend under this policy as follows:

> Nowhere in the complaint in the underlying federal action is there any allegation that the contamination resulted from the ownership, maintenance or use of a covered auto. There are no allegations the releases were caused by any particular feature, malfunction or improper operation of Superior's business automobiles. Although we read the federal complaint broadly, there are no facts alleged which are within the coverage of [the policy in question.]

*Id.* In other words, despite the fact that Superior's business was the *transport* of waste to the site, at least making it conceivable that the vehicles Superior presumably used to deliver hazardous substances to the site were in some way responsible for the release of those substances at the site, the lack of any allegation related to Superior's business automobiles defeated Superior's claim for a defense under that policy.

As with the latter insurance policy in *Superior Equipment*, a finding that OneBeacon has a duty to defend IBC for infringement of a title based on allegations in the Flowers Complaint would require an unacceptable degree of imagination. We trust that essentially all companies with a trademark affiliated with certain products market those products "under" the trademark in the sense that the trademark is included on the product's packaging. Whether the trademark is featured on a

-8-

product's packaging in a way that allows it to serve as the "caption or name" of the packaging is, however, a different question. The mere appearance of the trademarked phrase on the packaging does not allow us to assume that it is being used as the "heading" or "distinctive designation" of the wrapper. *See Merriam-Webster's* at 184, 823. Again, without information in the record about Flowers's bread wrappers, which were arguably reasonably ascertainable to OneBeacon, we cannot determine whether the content of the wrapper showed that the trademark "Nature's Own" potentially qualifies as a title. As to the Flowers Complaint, we conclude that Flowers's claim that it *markets* its bread products under the mark "Nature's Own" does not sufficiently allege that "Nature's Own" is the *title* of the packaging. *See Penn-Star*, 306 S.W.3d at 599 (barring courts from "reading into [a complaint] any factual assumptions"). Thus, it does not give rise to a claim potentially within the policy's coverage for *title* infringement.[4]

### B.     Infringement of a Slogan

IBC next contends that the facts alleged in the Flowers Complaint, in conjunction with the facts that OneBeacon knew or reasonably could have discovered, give rise to a claim potentially within the policy's coverage for claims arising from infringement of a slogan. The parties dispute the meaning of "slogan," which is left undefined by the policy. Primarily relying on *Hugo Boss Fashions, Inc. v. Federal Insurance Co.*, 252 F.3d 608 (2d Cir. 2001), OneBeacon contends that the phrase "Nature's Own" is not a slogan because a trademarked name of a product cannot simultaneously qualify as a slogan. IBC, however, opposes this assertion and

---

[4]To the extent IBC argues that "Nature's Own" is a "title" because it is the name of Flowers's bread products, we reject this argument because bread is not a "matter" as defined by the policy because it is not a "communication." And for the reasons discussed in the next section, we also reject IBC's argument that "Nature's Own" is a "title" because it is "a promoter of the product's beneficial 'natural' qualities."

argues that we should look to a dictionary for the meaning of "slogan." Two applicable dictionary definitions of "slogan" are: (1) "a word or phrase used to express a characteristic position or stand or a goal to be achieved" and (2) "a brief attention-getting phrase used in advertising or promotion." *Merriam-Webster's* at 1174. Even assuming for purposes of argument that "Nature's Own" qualifies as a "slogan" under the policy if it meets either of these dictionary definitions, we hold that the duty to defend nevertheless has not been triggered.

To determine whether "Nature's Own" potentially qualifies as a slogan under either of the definitions stated above, we again examine the allegations in the Flowers Complaint and facts in the record regarding what OneBeacon knew or could have reasonably ascertained about Flowers's actual use of the words "Nature's Own." *See Cincinnati Ins. Co.*, 329 F.3d at 556 ("[W]e must determine whether the phrase 'The Wearable Light,' as used in ASP's [(the plaintiff in the underlying suit)] advertisements, potentially constitutes a slogan such that [the insured's] alleged infringement invokes [the insurer's] duty to defend."). Neither the allegations in the Flowers Complaint nor the facts IBC directs us to in the record suggest that Flowers uses the phrase "Nature's Own" to market its products in either of the ways defined in the dictionary. *See Custom Hardware*, 295 S.W.3d at 562 & n.6 (noting that neither party "points to any facts that were either known to the [insurer] or that were ascertainable through reasonable investigation at the commencement of the underlying suit that may have created a duty to defend").

Although IBC surmises that the word "nature" in "Nature's Own" shows that Flowers intends to tout that its breads "contain[] 'natural' rather than artificial ingredients," there are no allegations in the Flowers Complaint that Flowers actually has "a characteristic position or stand or a goal to be achieved" that is expressed by the term "Nature's Own." Moreover, there is nothing to indicate the extent to which Flowers produces or claims to produce "natural" bread products, however that might be defined. Similarly, IBC fails to identify anything in the record indicating that

-10-

Flowers claims to use or actually uses "Nature's Own" as "a brief attention-getting phrase used in advertising or promotion," rather than as a simple product identifier. Once again, while it is conceivable that "Nature's Own" could serve as a slogan in Flowers's marketing efforts for a line of natural bread products, the lack of any specific allegation relating to such a use, along with IBC's failure to identify any instance of such a use that would have been readily ascertainable by OneBeacon at the time the claim was filed, defeats IBC's claim for a defense under the policy.[5]

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's denial of IBC's motion for summary judgment and entry of judgment in favor of OneBeacon.

SMITH, Circuit Judge, dissenting.

I respectfully dissent from the court's holding that the district court did not err in concluding that IBC's policy with OneBeacon did not give rise to a duty to defend IBC in its litigation with Flowers.

Flowers filed suit against IBC for trademark infringement of its "Nature's Own" trademark. Flowers will likely pursue its suit against IBC—if it has not already—for trademark infringement and not infringement of a title or slogan. IBC's policy with OneBeacon expressly disclaims coverage of alleged trademark infringement. Despite this, IBC asked OneBeacon to defend it in its suit against Flowers. Thus, this court must determine, for purposes of a duty to defend under Missouri law, whether the

_____

[5]In light of our above holdings, IBC's additional claim for coverage under the policy's provision covering claims arising from "unfair competition and **claims** under Section 43(a) of the Lanham Act or similar state statutes" when those claims are alleged with a cause of action for infringement of a title or a slogan necessarily fails.

-11-

Flowers suit implicates coverage under IBC's policy with OneBeacon. To answer that question, Missouri law instructs us to look at the allegations and facts pleaded in the complaint to determine whether there is a *possibility* that the complaint implicates coverage under IBC's policy with OneBeacon. *McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999) ("The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependant on the probable liability to pay based on the facts ascertained through trial." (quotation and citation omitted)). "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* at 170–71. In other words, here, we must determine whether Flowers' complaint alleges facts giving rising to a "potential or possible" title or slogan infringement claim. "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 392 (Mo. Ct. App. 2007) (quotation and citation omitted).

After reviewing the policy, and the facts alleged in Flowers' complaint, I believe that it implicates IBC's policy with OneBeacon for infringement of a title or slogan. Although Flowers may not have alleged title or slogan infringement against IBC, nothing precluded it from doing so in the future. In fact, without changing the facts alleged in the complaint, Flowers could simply assert separate counts for title and slogan infringement, claiming that "Nature's Own" is a title or a slogan. These specific allegations of title and slogan infringement would undoubtedly invoke OneBeacon's duty to defend IBC. Because Flowers could assert a title and slogan infringement claim without adding any additional facts. In my view, the factual basis of Flowers' complaint implicates IBC's policy with OneBeacon—requiring a duty to defend.

In my view, "the question is not whether [Flowers] stated a claim for relief sufficient to survive a motion to dismiss. Rather, the question is: Did the original and

First Amended petitions state enough to potentially or possibly establish coverage under the policy, thereby triggering [OneBeacon's] duty to defend?" *Trucks Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 83 (Mo. Ct. App. 2005). "Missouri law suggests that as long as the petition demonstrates the *potential or possible* statement of a claim within insurance coverage, even if inartfully drafted, it triggers the insurer's duty to defend." *Id.* (emphasis added).

Here, unlike in *Superior Equipment Co. v. Maryland Casualty Co*, Flowers has alleged that IBC infringed its use of a phrase, "Nature's Own."986 S.W.2d 477 (Mo. Ct. App. 1998). Under the ambiguous definitions of OneBeacon's policy of "title" and "slogan," "Nature's Own" "potential[ly] or possibl[ly]" gave rise to a claim under IBC's policy with OneBeacon. *See McCormack Baron Mgmt. Serv., Inc.*, 989 S.W.2d at 170. The majority acknowledges that IBC's title infringement argument is "conceivable" notwithstanding OneBeacon's assertion that "there is *no possibility* of coverage." *Stark Liquidation Co.*, 243 S.W.3d at 392 (quotation and citation omitted).

Accordingly, I conclude that the district court erred by granting summary judgment to OneBeacon. As a result, I would remand the case to the district court for further proceedings.

———————————————