[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-14948
Non-Argument Calendar

————————————————

D.C. Docket No. 8:17-cv-01740-JSM-TGW

LAND'S END AT SUNSET BEACH COMMUNITY ASSOCIATION, INC.,
a Florida corporation,

Plaintiff - Appellant,

versus

ASPEN SPECIALTY INSURANCE COMPANY,
a North Dakota corporation,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(August 9, 2018)

Before WILLIAM PRYOR, ANDERSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Land's End at Sunset Beach Community Association, Inc., holder of a general commercial liability insurance policy issued by Defendant Aspen Specialty Insurance Company, appeals the district court's grant of Defendant's motion for judgment on the pleadings, holding that Defendant did not have a duty to defend Plaintiff in an underlying lawsuit. After careful review, we affirm.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff operates a condominium complex in Treasure Island, Florida, and advertises short-term rentals of its condos. Defendant sells insurance and issued a commercial general liability policy to Plaintiff.

#### 1.    The Insurance Policy Terms

Among other things, the policy Defendant issued provides coverage for "Personal and Advertising Injury" subject to certain exclusions. In relevant part, the policy states:

> **SECTION I – COVERAGES COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

2

**2. Exclusions**

This insurance does not apply to: . . .

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of a copyright, trade dress or slogan. . . .

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement. . . .

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses: . . .

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

3

2.    The Underlying Lawsuit Against Plaintiff

Land's End Acquisition Corporation ("LEAC") operates hotels and resorts in Alaska.  LEAC owns the "LAND'S END" trademark, which it uses to advertise its Land's End hotel in Homer, Alaska.  In September 2015, LEAC sent Plaintiff a cease and desist letter accusing Plaintiff of improperly using the "LAND'S END" trademark.  Plaintiff subsequently filed a declaratory judgment action against LEAC in the District Court for the Middle District of Florida, Case No. 8:16-cv-00828-EAK-JSS, seeking a declaration that Plaintiff had not infringed on LEAC's trademarks.  In response, LEAC filed counterclaims and a third-party complaint. LEAC later amended its counterclaims and third-party complaint.

a)    LEAC's Counterclaims against Plaintiff

The "Factual Background" to LEAC's counterclaims and third party claims first describes "LEAC's Use and Ownership of the Land's End Marks" and then describes Plaintiff's and other defendants' "Use of the Land's End Mark."  LEAC alleges Plaintiff's use of the LAND'S END mark began sometime after LEAC started using it.  LEAC alleges that Plaintiff used the LAND'S END mark "in connection with condominiums that are leased as short term vacation accommodations in the same way that hotel rooms are leased as short term vacation accommodations."  LEAC also alleges "in many instances, [Plaintiff] appears to use the LAND'S END mark alone, as a trademark, not descriptively,

4

without the proper full name of the property (e.g. Land's End at Sunset Beach or Land's End at Treasure Island), in connection with short-term room rental services . . . This use of the LAND'S END mark creates a likelihood of confusion with LEAC's LAND'S END marks for the same or similar and related goods and services."  Based on these allegations, LEAC brought five causes of action against Plaintiff:  trademark infringement under the Lanham Act (Count I), false designation of origin under the Lanham Act (Count II), trademark infringement under Florida common law (Count III), unfair competition under Florida common law (Count IV), and a declaratory judgment that Plaintiff owns no common law rights in the LAND'S END mark.

LEAC incorporated the same general allegations in each Count and added claim-specific allegations.  In Count I, LEAC alleged that the "above-cited acts," referring to the use of the LAND'S END mark, constituted trademark infringement, "thereby creating a likelihood of confusion as to the source of origin, affiliation, approval or sponsorship of such services."  Count I also alleged that Plaintiff used the identical LAND'S END mark for the same or related goods and services, targeting the same customers.

Count II alleged the "above-cited acts" (i.e. use of the LAND'S END mark) constitute false designation of origin in that Plaintiff used the LAND'S END mark "in promoting and marketing their services thereby falsely designating the source

of origin, affiliation, approval or sponsorship of such services." Count III asserted that the "above-cited acts" constitute trademark infringement under Florida common law. In Count IV, LEAC alleged Plaintiff's "use of the LAND'S END mark . . . without using their full name . . . is deceptive conduct within the meaning of the term as defined by Florida common law." LEAC then alleged it was damaged by Plaintiff's "unfair competition by reason of the likelihood of confusion as to the source or affiliation, sponsorship or approval of [Plaintiff's] services and activities . . . ." Count V did not allege damage to LEAC, but merely sought a declaration concerning the scope, if any, of Plaintiff's common law trademark rights.

b)     Defendant's Denial of Defense Benefits

Plaintiff notified Defendant of LEAC's counterclaims and third-party complaint, as well as LEAC's amended counterclaims and third-party complaint, and requested defense benefits under the policy issued by Defendant on multiple occasions. Defendant repeatedly denied Plaintiff's request for defense benefits, maintaining the policy excluded trademark infringement suits.

## B.    Procedural History

On July 20, 2017, Plaintiff brought this action for declaratory judgment, seeking a declaration that Defendant was obligated to defend Plaintiff in the underlying lawsuit filed by LEAC. Plaintiff filed an Amended Complaint on

6

August 7, 2017.  A week later, Plaintiff moved for summary judgment.  The district court denied Plaintiff's motion as premature.  Defendant moved for judgment on the pleadings.  The district court found that "because all of the causes of action [in the underlying suit] were dependent on the [Plaintiff's] infringement of the LAND'S END trademark, the IP Exclusion unambiguously barred coverage under the Policy" and Defendant did not owe a duty to defend Plaintiff in the underlying suit.

## II.    DISCUSSION

### A.    Standard of Review

We review a judgment on the pleadings *de novo*.  *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014).  "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."  *Id.* (citation omitted).  "Because we are reviewing a ruling on a motion for judgment on the pleadings, we accept all of the allegations in the complaint as true and view them in the light most favorable to [Plaintiff], the nonmoving party."  *Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1139 (11th Cir. 2017).

The interpretation of provisions in an insurance contract is a question of law reviewed *de novo*.  *S.-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017).

### B.    Florida Insurance Law and the Duty to Defend

We apply the substantive law of Florida in this diversity action.  *S.-Owners*, 872 F.3d at 1164.  In *Southern Owners Insurance Company*, we summarized Florida law governing the interpretation of insurance contracts:

> In Florida, the terms used in an insurance contract are given their ordinary meaning, and the policy must be construed as a whole "to give every provision its full meaning and operative effect."  *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000).  The Florida Supreme Court has emphasized the necessity of interpreting the "terms of an insurance policy . . . in their ordinary sense [to provide] a reasonable, practical and sensible interpretation consistent with the intent of the parties."  *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So.2d 249, 253 (Fla. Dist. Ct. App. 1972)).  An unambiguous policy provision is "enforced according to its terms whether it is a basic policy provision or an exclusionary provision."  *Hagen v. Aetna Cas. & Sur. Co.*, 675 So.2d 963, 965 (Fla. Dist. Ct. App. 1996).
>
> If policy language is susceptible to multiple, reasonable interpretations, however, the policy is considered ambiguous and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy."  *Auto–Owners*, 756 So.2d at 34.  To allow for such a construction, the insurance policy "must actually be ambiguous."  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005).  Courts are not authorized "to put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity."  *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So.2d 95, 97 (Fla. Dist. Ct. App. 1991).  The mere fact that an insurance provision is "complex" or "requires

8

analysis" does not make it ambiguous.  *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla. 2003).

*Id.* (footnote omitted).

"[A]n insurer's duty to defend under Florida law is determined solely by the allegations of the complaint in which the insured has been sued, and if those allegations identify facts within the scope of the policy's coverage, the insurer must defend."  *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1107 (11th Cir. 2017).  "This is so even if it is uncertain whether coverage of the claim exists under the policy."  *Id.*  "[T]he theories advanced and labels used in a complaint are subordinate to the facts alleged for the purpose of determining the duty to defend."  *Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, 657 F.3d 1135, 1145 (11th Cir. 2011) (citations omitted).  "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit."  *Id*. at 1141 (citation omitted).  "The merits of the underlying suit have no bearing on whether the duty is owed."  *Id.* at 1142.  "Furthermore, any doubt about the duty to defend must be resolved in favor of the insured.  Coverage is determined from examining the most recent amended pleading, not the original pleading."  *Id.*

9

### C.    The District Court Properly Determined that Defendant Did Not Owe Plaintiff a Duty to Defend the Underlying Suit

For purposes of this appeal, we accept that LEAC raised claims asserting damages from advertising injury that would give rise to a duty to defend absent a coverage exclusion.[1]  The dispositive issue on appeal is whether LEAC asserted any counterclaim that falls outside the scope of the intellectual property exclusion. As presented by the parties, that issue turns on whether LEAC's asserted false designation of origin and unfair competition counterclaims arise out of infringement of LEAC's LAND'S END trademark and, if so, whether the slogan infringement carve-out of the intellectual property exclusion applies.

#### 1.    LEAC's False Designation of Origin and Unfair Competition Counterclaims Arise Out of Trademark Infringement

LEAC's false designation of origin and unfair competition counterclaims did not give rise to a duty to defend.  The policy "does not apply to: . . . '[p]ersonal and advertising injury' arising out of the infringement of . . . trademark."  "[T]he phrase 'arising out of' is *not* ambiguous and should be interpreted broadly." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008) (citing *Taurus Holdings,* 913 So.2d at 539) (emphasis in original).  "The term 'arising out of' is broader in meaning than the term 'caused by' and means

---

[1]  Defendant conceded below, and did not challenge here, that LEAC's counterclaims fall within the advertising idea offense included in the broader definition of "personal and advertising injury" for which the policy provided coverage absent applicability of the intellectual property exclusion.

10

'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Taurus Holdings*, 913 So.2d at 539. To have arisen out of something, there must be "some causal connection, or relationship" that is "more than a mere coincidence," but proximate cause is not required. *Id.* "[T]he phrase 'arising out of' contemplates a more attenuated link than the phrase 'because of.'" *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 293 (Fla. 2007).

The false designation of origin and unfair competition counterclaims fall within the intellectual property exclusion because they both arise out of Plaintiff's alleged infringement of the LAND'S END trademark. Paragraph 104 of LEAC's amended counterclaims articulates the trademark nature of LEAC's false designation of origin claim: "[t]he above-cited acts . . . constitute false designation of origin . . . in that [Plaintiff has] used the LAND'S END marks in promoting and marketing their services, thereby falsely designating the source of origin . . . of such services." Likewise, Paragraph 113 articulates the trademark nature of LEAC's unfair competition claim: "[Plaintiff's] use of the LAND'S END mark to refer to properties within the Sunset Beach complex without using their full name of 'Land's End at Sunset Beach' or 'Land's End at Treasure Island,' with constructive and/or actual knowledge of LEAC's incontestable federal trademark rights, is deceptive conduct within the meaning of term as defined by Florida

11

common law." The general allegations of paragraphs 1–88, incorporated into each of these counterclaims, support those contentions and do not articulate a non-trademark bases for LEAC's false designation of origin or unfair competition counterclaims. The LEAC counterclaims make no mention of acts, other than trademark infringement, that would support a charge of false designation of origin or unfair competition. Instead, the counterclaims make clear that the alleged reason that Plaintiff's activities constitute false designation of origin and unfair competition is the use of the LAND'S END mark in Plaintiff's marketing.

That LEAC's false designation and unfair competition counterclaims require elements of proof beyond trademark use and that those types of claims may exist absent trademark infringement does not alter the analysis as Plaintiff contends. As alleged, LEAC's false designation and unfair competition counterclaims depend on Plaintiff's use of LEAC's trademark.[2] Accordingly, the allegations of false designation of origin and unfair competition are excluded from coverage as claims

---

[2] We reject Plaintiff's argument that a duty to defend existed because "no trademark rights viably existed (as the allegations in the underlying action suggest was likely the case)." LEAC's counterclaims include numerous allegations establishing the viability of its trademark rights and use of the LAND'S END mark before Plaintiff and we do not consider the merits of the underlying claims in determining whether a duty to defend is owed. *Trailer Bridge*, 657 F.3d at 1142. Moreover, contrary to Plaintiff's argument, this case is not analogous to *Corporate Risk International* where the complained of conduct concerned more than trade or service mark infringement as evidenced by the alleged violation of "other proprietary rights" in the underlying complaint. *Corporate Risk Int'l v. Assicurazioni Generali, S.p.A.*, 1996 U.S. Dist. LEXIS 19720, *8 (E.D. Va. Mar. 15, 1996).

"arising out of the infringement of . . . trademark."[3] *See, e.g., Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 221–24 (4th Cir. 2003) (trademark dilution, trade dress infringement and related unfair competition claims were all varieties of trademark claims excluded from coverage as arising out of infringement of trademark); *Parameter Driven Software, Inc. v. Mass. Bay Ins. Co.,* 25 F.3d 332, 337 (6th Cir. 1994) (holding that because "[a]ll four counts of [the] complaint[, including false designation of origin and unfair competition,] were based upon [the insured's] use of the trademark," policy exclusion for advertising offenses "arising out of . . . infringement of trademark" applied to relieve insurer of duty to defend).

### 2.    LEAC Did Not Allege Slogan Infringement

The slogan infringement carve-out of the intellectual property exclusion does not apply because LEAC did not allege slogan infringement.  Although not dispositive, LEAC's counterclaims do not mention slogan infringement.  Nor did LEAC characterize the LAND'S END mark in any way suggestive that it is a slogan.  *See ShoLodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256, 259 (6th Cir. 1999) ("Nor does [trademark infringement] fall within the ordinary meaning of the phrase 'infringement of slogan,' because a trademark or service mark is not

---

[3]  Plaintiff's argument that the intellectual property exclusion does not apply because it states that "[u]nder this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement'" is unpersuasive.  That provision makes clear that "other intellectual property rights" subject to exclusion should not be interpreted to include use of another's advertising idea; it does not limit the trademark infringement exclusion.

13

a 'slogan.'"); *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 773 F.Supp.2d 799, 815–16 (W.D. Mo. 2011), *aff'd*, 686 F.3d 539 (8th Cir. 2012) ("Renaming the trademark infringement and unfair competition claims pled in the *Flowers* litigation 'slogan infringement' in an effort to afford policy coverage would render the policy exclusion for claims of trademark infringement meaningless.  Under IBC's theory, any claim involving the alleged misuse of a trademarked name would be covered by the policy as a potential cause of action for slogan infringement.").

Moreover, nothing in the record suggests that LAND'S END is anything other than a trademark, much less that it acts as a slogan.  A slogan is a "distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase."  *Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 556 (6th Cir. 2003) (quoting Random House Unabridged Dictionary 1800 (2d ed. 1993)). "LAND'S END" is a product or source identifier and trademarked name of Land's End Acquisition Corporation, not an attention-getting catch phrase.  *See, e.g.*, *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 262–63 (5th Cir. 2017) ("'ART,' 'Active Release Techniques,' and 'Active Release Technique protocols' are not slogans.  They are brand and product names (or brand and product names used as an adjective.")); *Selective Ins. Co. of Am. v. Smart Candle, LLC*, 781 F.3d 983, 986 (8th Cir. 2015) ("The words 'Smart

14

Candle,' [are not] 'attention-getting.' The words simply are the trademarked name of the company, used for product recognition."); *Interstate Bakeries*, 686 F.3d at 546 ("IBC fails to identify anything . . . indicating that Flowers claims to use or actually uses 'Nature's Own' as 'a brief attention-getting phrase used in advertising or promotion,' rather than as a simple product identifier."). The "LAND'S END" mark differs significantly from the catchy promotional phrases other courts have deemed potential slogans, the alleged infringement of which gave rise to a duty to defend. *See, e.g.*, *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1268 (9th Cir. 2010) (affirming district court conclusion that "Steel Curtain" is potentially a slogan because a fair reading of the complaint revealed that it is a "brief attention-getting phrase" used to promote fan loyalty to the Pittsburgh Steelers); *Zen Design*, 329 F.3d at 556–57 (concluding that "The Wearable Light" was a slogan used to promote insured's "Sapphire" LED flashlight). While "there may be instances where the name of a business, product or service, by itself, is also used as a slogan," nothing in the counterclaims or extrinsic evidence suggests that LEAC ever used "Land's End" as a slogan.[4] *St. Surfing, LLC v. Great Am. E & S Ins. Co.*, 776 F.3d 603, 608 (9th Cir. 2014) (distinguishing the readily recognized "Steel Curtain" slogan of *Hudson* and

---

[4] We find no support for Plaintiff's contention that "'Land's End' functions as a slogan by drawing public attention through its iconic geographically indicative meaning as the farthest place jutting into the open sea."

finding that "Streetsurfer" was not a slogan); *Interstate Bakeries*, 686 F.3d at 546 (holding that the third-party complaint did not fall within the policy's slogan infringement coverage because, although "it is conceivable that 'Nature's Own' could serve as a slogan," the complaint made no "specific allegation relating to such a use" and the insured had not shown that the insurer otherwise knew of such a use).

Accordingly, LEAC did not state a slogan infringement claim and the slogan infringement carve-out of the intellectual property exclusion does not apply.

## III.   CONCLUSION

For the reasons explained above, we hold that Defendant had no duty to defend Plaintiff against the underlying suit and we **AFFIRM** the decision of the district court.