In the

# United States Court of Appeals
## for the Seventh Circuit

———————————

No. 22-1983

SHEMIKA D. MITCHELL, Executor
of the Estate of Tommy Harris,

*Plaintiff-Appellant,*

*v.*

DURHAM ENTERPRISES, INC., and DON DURHAM,

*Defendants-Appellants,*

*and*

OHIO SECURITY INSURANCE COMPANY, et al.,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Southern District of Illinois.
Nos. 20-cv-72 & 21-cv-1389 — **J. Phil Gilbert**, *Judge.*

———————————

ARGUED NOVEMBER 8, 2022 — DECIDED APRIL 24, 2024

———————————

Before SYKES, *Chief Judge*, and WOOD and SCUDDER, *Circuit Judges*.

SYKES, *Chief Judge*. Tommy Harris was diagnosed with bacterial sepsis after suffering repeated infections resulting from his dialysis treatment at a clinic in Belleville, Illinois. He filed a state-court malpractice action against the operators of the clinic and later added a claim against Durham Enterprises, Inc., the janitorial company responsible for cleaning the facility. This appeal concerns Durham's insurance coverage.

Durham tendered the suit to Ohio Security Insurance Company, its insurer. Ohio Security denied coverage based on the insurance policy's exclusion for injuries caused by fungi or bacteria. Harris and Durham then negotiated an agreement in which Durham promised not to mount a defense and Harris promised to seek recovery only from the insurer.

Harris moved to sever his claim against Durham and set it for a bench trial. The state trial judge granted the motion. On the trial date, the parties disclosed their agreement to the court. The judge then held a short, uncontested bench trial; adopted Harris's uncontested findings; and entered judgment against Durham for more than $2 million. Though Ohio Security was not a party and the insurance policy was not in the record, the consent judgment includes findings on insurance issues—notably, that the insurer breached its duty to defend and is estopped from asserting any policy defenses.

After the judgment became final, Harris filed an amended complaint purporting to add Ohio Security as a defendant.[1]

---

[1] Harris also added "Liberty Mutual Insurance" as a defendant. That was a mistake. "Liberty Mutual Insurance" is not a legal entity; it's a group of affiliated underwriting companies that includes Liberty Mutual Insurance Company and Ohio Security Insurance Company. The latter issued Durham's insurance policy. Though the policy document bears the

Ohio Security removed the action to federal court and sought a declaration of its coverage obligations. The district court held that the bacteria exclusion precludes coverage.

Aligned in interest, Harris and Durham jointly appealed, challenging the no-coverage ruling but also raising a belated challenge to subject-matter jurisdiction under the *Rooker–Feldman* doctrine. The jurisdictional argument is meritless. The *Rooker–Feldman* doctrine does not block federal jurisdiction over claims by *nonparties* to state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 465 (2006); *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994). And the judge's merits ruling was sound; the policy's bacteria exclusion precludes coverage for this loss. We affirm the judgment.

## I. Background

In December 2015 Harris had a dialysis catheter surgically implanted and began dialysis treatment at the Metro East Dialysis in Belleville. From February to August 2016, he contracted multiple infections at the catheter site, necessitating several surgeries to remove and replace the catheter. The infections, in turn, led to sepsis. During this period, Harris was diagnosed with both gram positive and gram negative sepsis; both are types of bacterial sepsis.

Several public health agencies investigated an increase in patient infections originating from the dialysis clinic during

logomark "Liberty Mutual Insurance," the declarations page indicates that Ohio Security is the insurer. The district judge noted these anomalies and permitted Harris to substitute Liberty Mutual Insurance Company for "Liberty Mutual Insurance." It's not clear why Liberty Mutual Insurance Company is in the case. Ohio Security issued the relevant policy, so we can ignore Liberty Mutual.

this six-month period in 2016. Among other discoveries, the investigation found that Durham Enterprises, the janitorial company responsible for cleaning the facility, was doing so improperly.[2] There is no dispute that Harris's infections were caused in part by Durham's negligent cleaning of the facility.

In January 2017 Harris commenced a malpractice action in St. Clair County Circuit Court against the dialysis clinic alleging (among other things) that it failed to properly sanitize the facility and its equipment. But he did not name the proper defendant. In April he filed an amended complaint with the correct names of the clinic operators: Renal Life Link, Inc., and Davita, Inc. As a prerequisite for his malpractice claims, Harris attached a certificate of merit prepared by a medical expert pursuant to Illinois law. *See* 735 ILL. COMP. STAT. 5/2-622. The certificate stated that the clinic operators deviated from acceptable standards of care by failing to properly sanitize the facility, causing Harris's injuries.

Harris's amended complaint also added a negligence claim against Durham Enterprises and its owner, Don Durham. (We refer to them collectively as "Durham.") More specifically, Count Three of the amended complaint alleged that the janitorial company "negligently and carelessly failed to properly clean and sanitize said dialysis center."

---

[2] The investigators determined that Durham improperly used vinegar as its primary cleaning agent, used dirty mop heads to clean the floors, failed to clean all touchable surfaces, and failed to disinfect the cleaning cart upon entry and exit from the facility.

Durham was insured during the relevant period under a commercial general liability policy issued by Ohio Security.[3] Durham sought a defense and indemnification from the insurer, submitting the amended complaint, the certificate of merit, and an affidavit from Harris's counsel.

Ohio Security promptly reviewed the materials Durham submitted and the language of the operative insurance policy. Relevant here is the policy's "Fungi or Bacteria Exclusion," which excludes coverage for

> "Bodily Injury" … which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

But there is an exception: "This exclusion does not apply to any 'fungi' or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption."

By letter dated May 15, 2017, Ohio Security denied coverage based on the bacteria exclusion. Emily Anderson, the claims adjuster who processed the claim, made the

---

[3] Durham also carried excess insurance under an umbrella policy issued by Ohio Casualty Insurance Company, Ohio Security's parent. Ohio Casualty intervened in the district court to protect its potential exposure under the umbrella policy. The two policies are materially identical, so for simplicity we treat the policies as one and refer to the two insurers as "Ohio Security."

determination based on the materials Durham had provided; she did not seek any additional information. She did, however, invite Don Durham to submit further information if he wished. She also asked him to forward any amended pleadings in the Harris litigation. Durham did not respond to the invitation to submit further information. The May 15 letter denying coverage was the last communication between Durham and its insurer for quite some time.

Harris's case in state court moved forward very slowly. At some point along the way, Harris and Durham reached an agreement whereby Durham promised not to mount a defense and Harris promised to seek recovery only from Durham's insurer. Durham did not notify Ohio Security of this agreement.

On March 18, 2019—nearly two years after initiating the state-court litigation—Harris filed an uncontested motion to sever his claim against Durham into a separate action. The state trial judge granted the motion and assigned a new case number, and Harris filed a new complaint under the second case number naming only Don Durham and Durham Enterprises as defendants. On May 15 Harris moved for a trial to the bench. That motion was granted, and the case against Durham was set for a bench trial on July 30.

On July 18, 2019—12 days before the scheduled bench trial—Harris and Durham formalized their agreement in a written "Covenant Not to Execute and Limit Recovery." Under Missouri law, which governs this insurance dispute, Durham had a statutory duty to notify Ohio Security of the

agreement within 30 days. MO. REV. STAT. § 537.065(2) (2021).[4]
It did not do so.

At the start of trial on July 30, the parties told the judge
about their agreement—specifically, that Durham had agreed
not to mount a defense in exchange for Harris's agreement to
seek recovery of any judgment only from the insurer. The
judge then held a brief, uncontested bench trial, and on Octo-
ber 9 adopted Harris's uncontested findings of fact and con-
clusions of law verbatim and entered judgment against
Durham for a little over $2 million. The judgment included
findings adverse to Durham's insurer even though Ohio Se-
curity was not a party to the lawsuit and the insurance policy
was not in the record. Specifically, the judge found that (1)
Durham's insurer had a duty to defend the lawsuit; (2) it was
too late for the insurer to seek a declaration to the contrary;
(3) the insurer had breached its duty to defend; and (4) the

---

[4] Missouri law permits agreements of this type but requires the insured to
notify the insurer within 30 days:

> If any action seeking a judgment on the claim against the
> tort-feasor is pending at the time of the execution of any
> contract entered into under this section, then, within
> thirty days after such execution, the tort-feasor shall pro-
> vide his or her insurer or insurers with a copy of the exe-
> cuted contract and a copy of any such action.

MO. REV. STAT. § 537.065(2) (2021). The insurer is entitled to intervene in
the underlying suit within 30 days of receiving notice. *See id.* § 537.065(4)
("Any insurer or insurers who receive notice pursuant to this section shall
have the unconditional right to intervene in any pending civil action in-
volving the claim for damages within thirty days after receipt of such no-
tice.").

insurer was estopped from raising policy defenses to coverage.

On December 7—after the judgment became final and the 30-day time to appeal had expired, *see* ILL. SUP. CT. R. 303—Harris filed an amended complaint adding Ohio Security as a defendant and seeking satisfaction of the judgment from it as Durham's insurer. Before this development, the insurer had not heard from Durham since the May 2017 letter denying coverage. Ohio Security removed the case to federal court based on diversity of citizenship and sought a declaration concerning its coverage obligations. Harris and Durham, aligned in interest, both moved to remand, but the district judge denied the motion.

The case proceeded to cross-motions for summary judgment on Ohio Security's duty to defend. The judge held that the bacteria exclusion bars coverage, the "bodily consumption" exception is inapplicable, and Ohio Security therefore owed no duty to defend Durham in the Harris lawsuit. That ruling appeared to resolve all other insurance issues in Ohio Security's favor—i.e., questions of indemnification, breach of contract, and bad-faith denial of coverage—so the judge issued an order to show cause why final judgment should not be entered for the insurer.

In response Harris argued for the first time that the court lacked subject-matter jurisdiction under the *Rooker–Feldman* doctrine. Durham's response simply reargued the judge's duty-to-defend ruling. Ohio Security argued that final judgment in its favor followed necessarily from the judge's conclusion that it had no duty to defend.

The judge agreed with Ohio Security. He explained that because the duty to defend is broader than the duty to indemnify, his ruling on the duty to defend necessarily resolved all remaining insurance issues in the insurer's favor. Without addressing Harris's *Rooker–Feldman* argument, the judge entered final judgment for Ohio Security.

Harris died shortly after judgment was entered. His attorney joined with Durham's counsel to file a timely notice of appeal. But the notice erroneously listed Harris as the plaintiff-appellant. In compliance with Rule 43(a) of the Federal Rules of Appellate Procedure, Harris's counsel later moved to substitute Shemika D. Mitchell, the executor of Harris's estate, as the plaintiff-appellant. We granted the motion.

## II. Discussion

As we've just noted, Harris's estate and Durham filed a joint appeal. But Harris's estate alone has shouldered the burden of developing an appellate challenge to the district court's judgment. That's not surprising. With its immunity from collection secure, Durham was content to let the estate fight the battle over insurance coverage, so it summarily adopted the estate's appellate arguments and called it a day.

We focus then on the issues the estate raises on appeal. There are two. The estate argues that the *Rooker–Feldman* doctrine bars subject-matter jurisdiction and that the judge wrongly concluded that Ohio Security had no duty to defend Durham in the state-court lawsuit. Ohio Security responds that the *Rooker–Feldman* argument is frivolous; on this issue it filed a separate motion for sanctions under Rule 38 of the Federal Rules of Appellate Procedure. The insurer also defends the judge's no-coverage ruling on the merits.

We begin, as we must, with the jurisdictional argument. But we can be brief. *Rooker–Feldman* does not apply here. The doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining the limits of the jurisdictional rule established in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). The *Rooker–Feldman* rule enforces the line between original and appellate jurisdiction in the federal judicial system. The Supreme Court has appellate jurisdiction to review and modify or reverse a state-court judgment; the lower federal courts do not. *Id.* at 291–92.

In keeping with the doctrine's rationale and narrow application, the Supreme Court has held that *Rooker–Feldman* does not apply "where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Lance*, 546 U.S. at 464. A federal litigant who was absent from the underlying litigation and judgment in state court is "in no position to ask [the Supreme Court] to review the state court's judgment" but instead is "merely seek[ing] to litigate its … case for the first time" in federal court. *De Grandy*, 512 U.S. at 1006.

Because Ohio Security was not a party to the Harris litigation in state court and is not a party to the state-court judgment against Durham, *Rooker–Feldman* cannot be invoked against it. The estate rests its jurisdictional argument on a footnote in *Lance* in which the Court declined to address

"whether there are *any* circumstances, however limited, in which *Rooker–Feldman* may be applied against a party not named in an earlier state proceeding." *Lance*, 546 U.S. at 466 n.2. The Court gave an example of a limited circumstance that might qualify: "*e.g.*, where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent." *Id.*

The Court's example makes sense considering the logic of the doctrine: a decedent's estate simply steps into the decedent's shoes and like the decedent cannot seek de facto appellate review of a state-court judgment in district court. But this example doesn't remotely fit the procedural facts of this case. Ohio Security is not stepping into the shoes of a state-court litigant. The estate's *Rooker–Feldman* argument is clearly foreclosed by *Lance* and *De Grandy.* Subject-matter jurisdiction is secure.

Turning to the merits, the estate challenges the judge's determination that Ohio Security had no duty to defend Durham in the state litigation. That ruling turned on the insurance policy's bacteria exclusion and the exclusion's "bodily consumption" exception. We review de novo the judge's interpretation and application of the Ohio Security insurance policy. *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 718–19 (7th Cir. 2015). Everyone agrees that Missouri law governs this insurance-coverage dispute.

When sitting in diversity, we are bound by controlling decisions of the state's highest court, and when the state's highest court has not yet addressed an issue, we must predict how it would rule. *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517–18 (7th Cir. 2021). We also "consult and follow the decisions of intermediate appellate courts unless there is a convincing

reason to predict the state's highest court would disagree." *Id.* at 517 (quotation marks omitted). "So while a state supreme court's rule would control, a state appellate court's decision can provide controlling guidance as well." *Id.* at 517–18.

In Missouri (as elsewhere), an insurer's duty to defend arises "when there is a possibility or potential for coverage at the outset of the case." *Allen v. Bryers*, 512 S.W.3d 17, 31 (Mo. 2016). "The obligation … to defend a suit … is to be determined from the cause of action pleaded, at the time the action is commenced, not from what an investigation or a trial of the case may show the true facts to be." *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. Ct. App. 2007) (emphasis removed) (quotation marks omitted).

The insurer's duty to defend is determined by comparing the facts alleged against the insured in the complaint with the text of the insurance policy. If the complaint alleges facts that potentially give rise to a claim within the policy's coverage, the insurer has a duty to defend the insured. *Allen*, 512 S.W.3d at 31. An insurer's assessment of its duty to defend should also consider facts that it either knows or "are reasonably apparent [to it] at the outset of the case." *Id.* (quotation marks omitted).

The insurer may also have a duty to defend based on facts that are reasonably ascertainable at the outset of a case, even if they were not actually ascertained. "[I]f, at the time the claim is made, facts … could reasonably be ascertained by the insurer that would potentially put the claim within the scope of the policy, the insurer must defend the insured." *Id.* (quoting *Fostill Lake Builders, LLC v. Tudor Ins. Co.*, 338 S.W.3d 336, 347 (Mo. Ct. App. 2011)). When an insured claims that facts establishing coverage were ascertainable by the insurer

through reasonable investigation, the insured must point to evidence of what the insurer would have found through reasonable investigation that would have brought the claim within the policy's coverage. *Interstate Bakeries Corp. v. One-Beacon Ins. Co.*, 686 F.3d 539, 544 (8th Cir. 2012) (applying Missouri law).

The standard for determining an insurer's duty to defend is undeniably generous to the insured—the duty arises when there is a "possibility" or "potential" for coverage based on the facts alleged in the complaint or reasonably apparent to the insurer when the case begins. But duty to defend is not "boundless." *Id.* The scope of the duty is limited by the language of policy, which expresses the intent of the contracting parties. *Id.* The insurer has the burden to establish that it owes no duty to defend. *Id.* at 543; *see also Allen*, 512 S.W.3d at 31.

This case turns on the bacteria exclusion in the Ohio Security policy, which excludes from coverage any injury "which would not have occurred … but for … exposure to … any … bacteria on or within a building or structure, including its contents." The amended complaint in the state-court suit alleged that Harris "suffered numerous infections" in part because Durham "negligently and carelessly failed to properly clean and sanitize [the] dialysis center." The complaint itself contains no specifics about what type of infections Harris suffered, but the certificate of merit accompanying the complaint added the relevant details. The certificate states that Harris was placed "at significantly increased risk of bacterial sepsis and, in fact, [Harris] was diagnosed with both gram positive and gram negative sepsis"; both are types of bacterial infection. Accordingly, based on the allegations in the amended

complaint and the details in the attached certificate of merit, the bacteria exclusion plainly applies.

The estate resists this conclusion, arguing that it's inappropriate to consider the certificate of merit to determine the duty to defend. Citing *Garrison v. Choh*, 719 N.E.2d 237, 240, 243 (Ill. App. Ct. 1999), the estate emphasizes that a certificate of merit, though required for a malpractice claim in Illinois, is not considered a formal part of the complaint. That's irrelevant in this context. The certificate of merit was attached to the amended complaint and provided facts known to the insurer at the outset of the case; it's not off-limits in the duty-to-defend calculus. *See Allen*, 512 S.W.3d at 31.

The estate next takes issue with the insurer's lack of investigation, criticizing the claims adjuster for denying coverage without first seeking medical records or other information related to the claim. This line of argument requires the estate to identify facts that would have given rise to a duty to defend and to support its argument with evidence that would have been found by the insurer through reasonable investigation. *See Interstate Bakeries*, 686 F.3d at 546. The estate has not identified *any* such facts, let alone provided evidence to back up this argument.

Finally, the estate contends that this case falls within the bacteria exclusion's "bodily consumption" exception. To repeat, the exception provides that the exclusion "does not apply to any … bacteria that are, are on, or are contained in, a good or product intended for bodily consumption." The estate bears the burden of showing that the exception applies. *See Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 622 (Mo. Ct. App. 2001).

We note first that although Harris and Durham both made passing references to the bodily-consumption exception in their responses to Ohio Security's summary-judgment motion, neither of them developed an argument about its application. Ohio Security justifiably raises waiver. *Ross v. Fin. Asset Mgmt. Sys., Inc.*, 74 F.4th 429, 434 (7th Cir. 2023) ("When a party fails to develop an argument in the district court, the argument is waived, and we cannot consider it on appeal." (quoting *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509 (7th Cir. 2013))).

Even if we were inclined to overlook the failure to adequately preserve this issue, the estate made only minimal effort in its appellate brief to explain the basis for its claim that the bodily-consumption exception applies. The estate never identified a "good or product intended for bodily consumption" that might have caused Harris's injuries. Instead, it returned to its refrain that the claims adjuster did not adequately investigate the applicability of the bacteria exclusion but again did not explain why the bodily-consumption exception might have applied or how a reasonable investigation would have made that apparent.

At oral argument the estate suggested for the first time that the dialysis machines caused Harris's infections and could be considered a good or product "intended for bodily consumption" within the meaning of the exception. Arguments first raised at oral argument are waived. *Wonsey v. City of Chicago*, 940 F.3d 394, 398–99 (7th Cir. 2019). Waiver aside, to the extent that this new and undeveloped theory posits that Durham was responsible for cleaning the dialysis *machines*, it conflicts with Harris's allegations in the state-court suit. The amended complaint alleged that the *clinic operators* failed to (1) "timely

change the diasafe filters"; (2) "properly maintain the prem-
ises to minimize risk of infection to patients"; and (3)
"properly maintain dialysis machines and equipment to min-
imize the risk of infection in patients." Durham, on the other
hand, was accused of failing to properly clean and sanitize the
dialysis *facility*. Ohio Security was not required to imagine a
wholly different and contradictory set of allegations when
evaluating its duty to defend. *Interstate Bakeries*, 686 F.3d at
545 (declining to find a duty to defend when the insured's ar-
gument required "an unacceptable degree of imagination").

In sum, the policy's bacteria exclusion precluded coverage
for this loss. We agree with the district judge that Ohio Secu-
rity had no duty to defend Durham in the Harris litigation.

There is one final matter. As we've noted, Ohio Security
moved for Rule 38 sanctions limited to its costs to defend the
*Rooker–Feldman* argument, which it characterizes as frivolous.
An appeal is frivolous (in whole or in part) "when the result
is obvious or when the appellant's argument is wholly with-
out merit." *Harris N.A. v. Hershey*, 711 F.3d 794, 802 (7th Cir.
2013) (quotation marks omitted). The *Rooker–Feldman* argu-
ment was clearly foreclosed by the Supreme Court's decisions
in *Lance* and *De Grandy*. The estate's argument to the contrary
was paper thin. And neither the estate nor Durham bothered
to file a response to the Rule 38 motion or even a reply brief.

Still, we conclude that sanctions are unwarranted here.
"Frivolous" is not synonymous with merely "unsuccessful or
unlikely to succeed." *Dolin v. GlaxoSmithKline LLC*, 951 F.3d
882, 887 (7th Cir. 2020) (internal quotation marks omitted).
And even if an appeal is frivolous, "Rule 38 sanctions are not
mandatory but are left to the sound discretion of the court of

appeals." *Harris N.A.*, 711 F.3d at 802. We decline to award sanctions on this discrete issue. The Rule 38 motion is denied.

AFFIRMED; RULE 38 MOTION DENIED.