In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1419

MEDLEGAL SOLUTIONS, INC., doing business as Atticus Medical Billing,

*Plaintiff-Appellee,*

*v.*

PREMIUM HEALTHCARE SOLUTIONS, LLC,

*Defendant,*

APPEAL OF: VIVEK BEDI.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-00463 — **Jorge L. Alonso**, *Judge.*

ARGUED NOVEMBER 12, 2025 — DECIDED FEBRUARY 3, 2026

Before BRENNAN, *Chief Judge*, and ST. EVE and KIRSCH, *Circuit Judges.*

BRENNAN, *Chief Judge*. In this case two judgment creditors compete for the same assets. An individual, Vivek Bedi, secured a money judgment in state court against *Premier*

Healthcare Solutions, LLC. Years later, a company, MedLegal Solutions, Inc., secured a money judgment in federal court against *Premium* Healthcare Solutions, LLC.

Their collection efforts collided. When Bedi intervened in MedLegal's post-judgment proceedings, he discovered that his judgment was incorrectly against Premier, not Premium. So he sought and received an order in state court to correct the misnomer. Although this corrective order was entered after MedLegal obtained its judgment, the state court made it effective as of Bedi's original judgment entered years before. Concerned that the corrective order would unfairly prejudice its claim to Premium's assets, MedLegal sought an order deeming its secured interest superior to any interest Bedi might have. The district court granted MedLegal's request.

Before evaluating the merits of that ruling on priority, two jurisdictional questions must be addressed: whether the district court entered a final order on which appellate jurisdiction may rest, and whether the *Rooker-Feldman* doctrine bars the district court from ruling against Bedi on priority. We conclude that appellate jurisdiction is secure and *Rooker-Feldman* is no bar. On the merits, we affirm the district court's holding that MedLegal's secured interest is superior to Bedi's purported interest.

## I. Background

The judgment debtor in both cases, Premium Healthcare Solutions, LLC, is a limited liability company in Illinois. Rajeev Batra organized Premium to provide medical imaging services to personal injury and workman compensation claimants. To ensure payment, Premium often obtained health care liens against those plaintiffs' recoveries pursuant

to the Illinois Health Care Services Lien Act. 770 ILCS 23/1 et seq.

### A. Competing Liens and Collection Proceedings

1. *Bedi obtains a state court lien on the assets of "Premier."*

Over the years, Batra and Premium borrowed money from Vivek Bedi as cash flow needs arose. To secure the debt, the parties executed a promissory note in 2019. When Premium defaulted, Bedi sued Batra and "Premier [sic] Healthcare Solutions, LLC." In October 2022, the DuPage County, Illinois, Circuit Court entered a judgment against Batra and "Premier" and in favor of Bedi in the amount of $1,578,000, a sum representing unpaid principal and interest.[1]

Based on the October 2022 judgment, Bedi began collection proceedings. The clerk of court issued a citation to discover assets—a court notice, similar to a subpoena, to obtain information about a debtor's assets available to satisfy a judgment. After Batra responded to the citation, the state court entered an order against Batra's membership interest in "Premier" and a continuing impressed lien—a lien that remains in effect until a debt is fully satisfied—against "Premier['s] tangible and intangible assets in favor of Bedi.

Yet Bedi's October 2022 judgment and the state court's subsequent orders contained a misnomer—each referred to "Premier" rather than Premium. Premier Healthcare Solutions is a distinct entity unrelated to Batra or Premium. This made Bedi's lien effectively undiscoverable to any creditors searching for liens on Premium's assets. We turn next to one such creditor.

---

[1] All monetary sums are rounded to the nearest thousand.

2. *MedLegal secures a federal judgment against Premium.*

MedLegal Solutions, Inc., a Delaware corporation with a principal place of business in California, provides medical billing management services to healthcare providers. MedLegal paid Premium for the right to manage Premium's outstanding accounts receivable—amounts owed by customers for products sold or services rendered on credit. As part of the deal, MedLegal agreed to negotiate and recover payments from patients or their personal injury attorneys pursuant to Premium's health care liens. In return, Premium agreed that MedLegal could keep a portion of each payment before handing over the remainder.

But MedLegal discovered that Premium was collecting and retaining payments on accounts subject to their agreement without notice or payment. So, MedLegal filed an arbitration demand seeking damages for breach of contract. The arbitrator entered a money judgment for MedLegal and against Premium and awarded MedLegal attorney's fees and costs. After this, but before filing a complaint, MedLegal's search of Illinois state and federal court records did not reveal any judgments against Premium.

With arbitration award in hand, MedLegal petitioned the Northern District of Illinois district court to confirm the award plus post–judgment interest. In July 2024, the district court, sitting in diversity, entered a judgment in favor of MedLegal and against Premium for $488,000. Based on this July 2024 judgment, MedLegal issued a third-party citation to discover Premium's assets at BMO Bank and JP Morgan Chase Bank. Combined, the accounts held only a few thousand dollars, far less than what could satisfy MedLegal's or Bedi's judgments.

### 3. *Bedi and MedLegal initiate separate collection efforts.*

MedLegal's discovery process apparently resulted in a freeze on the BMO Bank account, which held funds to which Bedi believed he was entitled. After nearly two years Bedi renewed collection efforts in the Illinois state court. In August 2024, the DuPage County Clerk of Court issued a third-party citation to discover Premium's assets held by Innovative Management Solutions, Inc., a billing management company which, like MedLegal, serviced Premium's accounts receivable from plaintiffs in worker's compensation and personal injury cases. The state court issued a turnover order directing Innovative to pay all proceeds of these accounts, contract rights, and accounts receivable to Bedi "until the judgment entered in favor of Vivek Bedi is satisfied in full."

MedLegal's collection efforts also continued apace. A month after the state court issued a turnover order on Bedi's behalf, MedLegal moved to allow third-party citation proceedings by deposition, which the district court granted. The district court also issued a citation to discover Premium's assets, which MedLegal served on Premium in the days that followed.

## B. Bedi's Petition to Intervene

### 1. *Bedi intervenes in MedLegal's federal collection efforts.*

Before Premium had responded, however, Bedi petitioned to intervene in MedLegal's post-judgment collection proceedings in federal court. *See* FED. R. CIV. P. 24. In the meantime, that court issued nearly 70 citations on third parties, consisting mainly of law firms holding accounts receivable for

Premium. One citation was issued against Innovative, which was already subject to Bedi's state court lien and turnover order.

During a hearing on his petition to intervene, Bedi learned of the misnomer in his October 2022 judgment and subsequent orders. So he returned to state court the next day to fix it. In September 2024, the state court issued a corrective order, changing the caption of Bedi's case (so that Premium replaced "Premier") and amending Bedi's October 2022 judgment and related orders to reflect that change.

Importantly, this corrective order was issued *nunc pro tunc* ("now for then"), announcing the decrees would remain "in full force and effect" as of the date the orders had been entered. This meant that the state court intended the judgment to be treated as if it were entered properly against Premium in October 2022, notwithstanding that the correction was made years later and MedLegal lacked notice.

Believing this corrective order gave him priority, Bedi returned to federal court and filed an amended petition to intervene, attaching a copy of his September 2024 corrective order.

### 2. *MedLegal withdraws opposition to Bedi's intervention.*

A month later, the federal court conducted a hearing on Bedi's motions to intervene and to amend, which MedLegal opposed. But Premium's counsel revealed information that moved things forward. His client, despite the small sums discovered in its bank accounts, possessed about $7,500,000 in accounts receivable that Innovative was managing—more than enough to satisfy both judgments. Out of caution, Premium's counsel made clear that collecting on these accounts

receivable from Innovative depended on contingencies of on-going personal injury and workmen's compensation cases in other fora. Yet even if the full $7,500,000 is not realized, counsel was confident that over time enough cases would settle for both judgments to be satisfied.

Given these assets available for collection, MedLegal quickly agreed to withdraw its opposition to Bedi's petition to intervene and to set a briefing schedule on the issue of priority. And, to avoid dueling collection proceedings, Bedi was content to let the district court handle orderly enforcement until both judgments were satisfied. That progress notwithstanding, MedLegal—still uncertain of how the priority issue would turn out in federal court—filed its own petition to intervene in state court and to vacate Bedi's September 2024 corrective order.

### C. Partial Summary Judgment

MedLegal then moved for partial summary judgment in federal court, asking that its lien on Premium's assets be judged superior to "any supposed interest" of Bedi's. MedLegal argued that Bedi had no secured interest and, even if he did now, the corrective order could not retroactively destroy MedLegal's prior secured interest under Illinois law.

Bedi offered no counter on the merits, instead advancing a jurisdictional point. To him, the *Rooker-Feldman* doctrine—that federal courts cannot exercise appellate review over state courts—barred the district court from ruling on priority. In Bedi's view, that would necessarily implicate the validity of his October 2022 judgment.

On January 7, 2025, the district court rejected Bedi's *Rooker-Feldman* argument because MedLegal was not a state-

court loser ("January 7, 2025 Order"). Then, reaching the merits, the court decided that Bedi waived his opposition. MedLegal's interest in Premium's assets therefore was deemed superior to Bedi's supposed interest, so MedLegal could collect first. That court later entered a continuing impressed lien against Premium's assets and issued turnover orders against various law firms and BMO Bank.

Back in state court, MedLegal's efforts did not meet with the same success. The next day, MedLegal's petition to intervene and motion to vacate Bedi's September 2024 corrective order were denied. But the state court assured MedLegal that it could seek resolution of lien priority in federal court. Undeterred, MedLegal appealed, seeking review in the Illinois Appellate Court.

**D. Bedi's Rule 59(e) Motion and Appeal**

Not content with the district court's ruling, Bedi moved to alter or amend the January 7, 2025 Order under Federal Rule of Civil Procedure 59(e). Because the state court had already reached this issue, he alleged that the Full Faith & Credit Act, 28 U.S.C. § 1738, precluded, and *Rooker-Feldman* barred, the federal court from ruling on priority. Notwithstanding Bedi's objections, MedLegal moved for turnover orders against several third parties, including Innovative.

The district court denied Bedi's Rule 59 motion ("February 11, 2025 Order"). Even assuming the *nunc pro tunc* order's effect, "Bedi has not explained why that lien was perfected before and is superior to MedLegal's lien." As for *Rooker-Feldman* and issue preclusion, the court re-emphasized that the state court had not ruled on priority, so nothing precluded the district court from doing so.

For these reasons, the district court issued a turnover order against Innovative and various other third parties, requiring them to immediately transfer to MedLegal any assets currently held on behalf of Premium, and to pay any future assets acquired or bills collected on behalf of Premium directly to MedLegal ("February 11, 2025 Turnover Order"). Bedi appeals.

### E. Further Developments

Weeks after oral argument before us, the Illinois Appellate Court affirmed the state trial court, which had denied MedLegal's motion to intervene and to vacate Bedi's corrective order. The Illinois Appellate Court, however, assured MedLegal that it could pursue collection in federal court, where it was "by all accounts doing a good job" and where the "federal judge has decided that [MedLegal] takes first priority."

\*          \*          \*

The issues before us are whether the district court entered a final order on which appellate jurisdiction may rest; whether the *Rooker-Feldman* doctrine barred the district court from granting MedLegal's motion for partial summary judgment; and whether the district court erred in ranking MedLegal's interest in Premium's assets superior to Bedi's under Illinois law.

### II. Appellate Jurisdiction

We start, as we must, with jurisdiction. *Chi. Tchrs. Union, Local 1 v. Educators For Excellence, Inc.*, 159 F.4th 524, 528 (7th Cir. 2025).

The first question is whether the district court entered a final order. Under 28 U.S.C. § 1291, federal "courts of appeals

… shall have jurisdiction of appeals from all final decisions of the district courts of the United States." A decision is final for purposes of § 1291 if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 183 (2014). Conversely, orders that "specifically contemplate further activity in the district court are generally not final." *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 659 (7th Cir. 2009) (citation omitted). However, "[a] question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order." *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 775–76 (7th Cir. 2015) (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988)). And "if an order contemplates only ministerial actions by the court, finality may exist." *Star Ins. Co.*, 561 F.3d at 659. Thus, "finality is to be given a practical rather than a technical construction." *Microsoft Corp. v. Baker*, 582 U.S. 23, 37 (2017) (citation omitted).

Evaluating the finality of the orders in this case is complicated. They were all entered after MedLegal's final judgment against Premium, as well as after Bedi intervened in the post-judgment proceedings. Yet courts evaluate the finality of post-judgment orders without reference to the underlying final judgment. For purposes of appeal, post-judgment proceedings are treated as separate, free-standing lawsuits. *Star Ins. Co.*, 561 F.3d at 659.

Bedi proposes two orders that could be final: the January 7, 2025 Order granting MedLegal's motion for partial summary judgment on the issue of priority and the February 11,

2025 Order denying Bedi's motion to alter or amend that ruling pursuant to Rule 59(e). But there is also the February 11, 2025 Turnover Order, which required certain third parties, including Innovative, to pay MedLegal any funds currently held on behalf of Premium, and to do the same with any future funds acquired on behalf of Premium. We consider each of these three orders to determine if any provides appellate jurisdiction.[2]

### A. January 7, 2025 Order

Bedi submits the district court's January 7, 2025 Order granting partial summary judgment—ranking MedLegal's interest in Premium's assets superior to Bedi's purported interest—is a final judgment under § 1291. If not, he advances two alternative arguments. First, Bedi invites us to construe the grant of partial summary judgment as a declaratory judgment, which "shall have the force and effect of a final judgment." 28 U.S.C. § 2201(a); *see Wachovia Bank, N.A. v. Foster Bancshares, Inc.*, 457 F.3d 619, 621 (7th Cir. 2006) ("[A]lthough [a declaratory judgment] does not specify relief" it is "deemed final."). Second, Bedi contends that the January 7, 2025 Order is an interlocutory decision immediately appealable under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

---

[2] Bedi's notice of appeal references the January 7, 2025 Order and the February 11, 2025 Order, but not the February 11, 2025 Turnover Order. If the turnover order is final, then these other orders merge into it. The turnover order therefore can be considered for appellate jurisdiction. *See* FED. R. APP. P. 3(c)(4), (7); *see also* 16A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3949.4 (5th ed. 2025).

1.  *Final decision under § 1291?*

A grant of partial summary judgment is generally not a
final order under 28 U.S.C. § 1291, unless certified as such by
the district court under Rule 54(b). *Mwangangi v. Nielsen*, 48
F.4th 816, 822–23 (7th Cir. 2022). This rule permits courts to
"direct entry of a final judgment as to one or more, but fewer
than all, claims or parties only if the court expressly deter-
mines that there is no just reason for delay." FED. R. CIV. P.
54(b).

Rule 54(b) does not apply here, however. The district court
did not certify the appeal under Rule 54(b), nor could it. Rule
54(b) applies only to resolution of less than all claims or dis-
missal of parties, not to issues within a claim, *see Mwangangi*,
48 F.4th at 822–23, or what Rule 56(a) calls "part of [a] claim."
FED. R. CIV. P. 56(a).

Certain discrete issues, however, may be immediately ap-
pealable under 28 U.S.C. § 1292(b), subject to the appellate
court's discretion. Yet here the district court has not certified
a question for immediate interlocutory review under
§ 1292(b) nor even attempted to satisfy that statute's require-
ments. So, we cannot exercise jurisdiction over this appeal ab-
sent a final order. *See Martin v. Goodrich Corp.*, 95 F.4th 475,
478 (7th Cir. 2024) (28 U.S.C. § 1292(b) "allows for interlocu-
tory appeals when the district and appellate courts agree—so
long as the appeal meets certain [statutory] criteria").

Where Rule 54(b) and § 1292(b) do not apply, a grant of
partial summary judgment generally is not immediately
appealable as a final order. But because we take a practical
approach to finality, *Microsoft*, 582 U.S. at 37, the characteriza-
tion of the order as "'partial' summary judgment … is not
controlling" for purposes of § 1291. *Local P-171, Amalgamated*

*Meat Cutters and Butcher Workmen of N. Am. v. Thompson Farms Co.*, 642 F.2d 1065, 1069–70 (7th Cir. 1981).

The question is whether the January 7, 2025 Order—which resolved the issue of priority between MedLegal's claim and Bedi's purported claim—was dispositive of all claims at issue in the post-judgment proceeding. *Ray Haluch Gravel Co.*, 571 U.S. at 183. If so, there is nothing "partial" about the judgment; it is final under § 1291 without reference to Rule 54(b). *Thompson Farms Co.*, 642 F.2d at 1070 (concluding a purported grant of "partial summary judgment" was partial in name only, because it actually resolved all claims and was final under § 1291 without Rule 54(b) certification).

One case appears to be on point. In *King v. Ionization International, Inc.*, this court held that an order fixing priorities between competing claims in post-judgment proceedings is final and appealable under § 1291. 825 F.2d 1180, 1184–85 (7th Cir. 1987).

MedLegal distinguishes *King*. There, the court ruled on the issue of priority, but also fully adjudicated each competing claim under Illinois law. *See id.* at 1186–88. Here, although the court reached the issue of priority, "Bedi's adverse claim … has not been adjudicated and remains pending." So, unlike in *King*, the January 7, 2025 Order contemplates further activity on the merits. This further activity is not mere ministerial action. *Star Ins. Co.*, 561 F.3d at 659. Additionally, were the court to rule against Bedi on this remaining question of validity, it would moot the decision on priority because there would be no competing claim left to rank. The January 7, 2025 Order on priority is thus not a final decision. *See Star Ins. Co.*, 561 F.3d at 659; *HSBC Bank*, 793 F.3d at 775–76 (7th Cir. 2015) (quoting *Budinich*, 486 U.S. at 199).

Bedi disagrees. He submits the January 7, 2025 order fully resolved his claim, resolved all issues between him and Med-Legal, and left nothing in the district court's "pending litigation that involves Bedi."

Bedi's argument has two major flaws. First, although nothing is pending in the district court involving Bedi, this is self-made: Bedi chose to appeal the ruling on priority before adjudicating the validity of his claim. A party cannot manufacture finality with a premature appeal. *See Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 186–190 (7th Cir. 2011) (premature notice of appeal does not support appellate jurisdiction until a final judgment enters). Second, Bedi does not explain how a ruling on priority is dispositive on the validity of his claim.

On that second point, both parties overlook the crux of the issue. Whether the ruling on priority was dispositive of all material issues turns on the availability of assets to satisfy the judgments. This presents two scenarios with different results for appellate jurisdiction:

> **Scenario 1**: If the assets are insufficient to satisfy the superior claim's full judgment, then the ruling on priority is dispositive. To be first is to get everything; to be second is to get nothing. In this scenario, Bedi's adverse claim could be dismissed as moot without adjudicating its validity. So, the order would be final and appealable.

> **Scenario 2**: But if the assets are sufficient to satisfy the superior claim's full judgment and then some, the ruling on priority is not dispositive of Bedi's claim. To be first is to get everything owed; to be second is to get whatever is left. So,

even if we affirm and find that MedLegal's claim is superior to Bedi's, Bedi would still have to adjudicate the validity of his claim before collecting on the remainder in federal court.[3] So, the order is not final and not appealable.

We cannot be sure which scenario applies. On initial review this case could present the second scenario. Premium has about $7,500,000 in accounts receivable from which its creditors can collect. That is more than enough to fully satisfy both judgments. And the federal court did not dismiss Bedi after ruling on priority, which suggests the ruling was not dispositive.

But bills owed and bills collected are two different things. The amount that will become available for collection remains unclear. It depends on the contingencies of ongoing personal injury and workmen's compensation cases in other fora. Premium's counsel represented that, even if the full $7,500,000 is not realized, in time enough cases will settle for both judgments to be satisfied. Yet that is speculation, which will not do where appellate courts have an independent obligation to police the constitutional and statutory limits on our jurisdiction. *Cont.'l Indem. Co. v. BII, Inc.*, 104 F.4th 630, 636 (7th Cir. 2024).

In Bedi's reply brief he argues that he intervened only to dispute $85,000 in frozen BMO accounts. Because that amount

---

[3] Of course, if we reverse and conclude that Bedi has a superior interest to MedLegal's, Bedi would have to adjudicate the validity of his claim, no matter the extent of assets available if he wanted to collect in federal court. For purposes of finality under § 1291, however, that is not relevant. Many orders reversing a grant of summary judgment, in ordinary civil litigation too, result in the case going to trial on further issues.

is less than either judgment, that could present the first scenario. But Bedi's reply brief contradicts his argument to the district court at its hearing on his petition to intervene. There, he expressed his desire to have the district court guide orderly collection between the two parties until both judgments are fully paid. Just as with speculation, appellate jurisdiction cannot rest on a party's representation about litigation strategies to which they will not be bound once back in the district court. *See Cont. Ind. Co.*, 104 F.4th at 636.

   2.  *Declaratory Judgment?*

Bedi further contends the January 7, 2025 Order should be construed as a declaratory judgment, which would be immediately appealable under 28 U.S.C. § 2201(a) and § 1291. *Wachovia Bank,* 457 F.3d at 621. In support, he notes that Med-Legal's motion for partial summary judgment asked the court to "enter an order declaring" the parties' legal rights and relation on the issue of priority. And this court takes a practical approach to construing judgments as declaratory judgments. *Id.*

But *Wachovia* is distinguishable. There, it was appropriate to construe the grant of summary judgment as a declaratory judgment because the initial pleading was an action for a declaratory judgment. *Id*. Not so here. Bedi petitioned to intervene and did not file a declaratory action. The Declaratory Judgment Act permits courts to issue declaratory judgments in response to, among other things, an "appropriate pleading." 28 U.S.C. § 2201. Without an appropriate pleading, as in *Wachovia*, we cannot construe the January 7, 2025, order as a declaratory judgment.

   3.  *Collateral order?*

Bedi's third argument—that the January 7, 2025 Order is a collateral order—fares no better. Interlocutory decisions may be immediately appealable if they conclusively determine the disputed question, resolve an important issue completely separate from the merits, and are effectively unappealable after final judgment is reached. *E. Gate-Logistics Park Chicago, LLC v. CenterPoint Props. Tr.*, 144 F.4th 990, 993 (7th Cir. 2025) (citation omitted); *Cohen*, 337 U.S. at 546.

The issue of priority is not separate from the merits of Bedi's claim. His petition to intervene stated he has a valid and superior claim. A decision on the merits, like the order fixing priorities in *King*, must decide both. 825 F.2d at 1184–88. Nor is the ruling "effectively unreviewable" after a final judgment. *East Gate-Logistics*, 144 F.4th at 993. Bedi could appeal the priority ruling after adjudicating his claim.

For these reasons, Bedi's arguments that the January 7, 2025 Order is final and appealable fall short. So, the district court's grant of partial summary judgment and ruling that MedLegal's interest was superior to any purported interest of Bedi's does not provide appellate jurisdiction.

### B. February 11, 2025 Order Denying Motion to Amend

In search of a final order, Bedi also points to the district court's denial of his Rule 59(e) motion. Such motions to alter or amend a judgment are appropriate when the underlying judgment is final. *See Banister v. Davis*, 590 U.S. 504, 507–08 (2020); FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed … after the entry of the judgment."); *see also Osterneck v. Ernst & Whinney*, 489 U.S. 169, 177 (1989)

(Rule 59(e) appropriate only when the underlying order is final without reference to the Rule 59(e) motion).

Despite being filed under Rule 59(e), the district court expressly treated this as a Rule 60(b) motion to reconsider, which does not require finality. FED. R. CIV. P. 60(b) (allowing courts to relieve parties from a "final judgment, order, or proceeding"). But even if the district court implied finality in the underlying "judgment" by ruling on Bedi's motion, we review that conclusion of law de novo. *Trs. of Funds of IBEW Loc. 701 v. Pyramid Elec.*, 223 F.3d 459, 463 (7th Cir. 2000).

Because we already concluded that the January 7, 2025 Order was not final, the February 11, 2025 Order denying Bedi's motion to alter or amend a "judgment" also is not final. *See, e.g.*, *Pyramid Elec.*, 223 F.3d at 465 (concluding an order denying a motion to reconsider, based on a non-final underlying "judgment," and where there was more left to do, was non-final). A party cannot transform the underlying order into a final judgment simply by filing a Rule 59 motion.

**C. February 11, 2025 Turnover Order**

The docket contains one more order that could be final. The same day the federal court denied Bedi's motion to alter or amend the January 7, 2025 Order, that court issued a turnover order. This February 11, 2025 Turnover Order required Innovative, along with other third parties, to "immediately turn over to MedLegal … the specific funds of Premium … that they are currently holding." The order specified a precise amount: Innovative was to immediately turn over nearly $30,000. The turnover order also required Innovative and the other third parties to "turn over … funds or assets of

Premium … that they hereafter acquire or that comes [sic] due to Premium … after the date of this Order."

While opposing appellate jurisdiction at oral argument before us, MedLegal conceded a turnover order would be final.[4] Turnover orders often resolve the post-judgment proceeding and are treated as final. *See Kelley v. Stevanovich*, 40 F.4th 779, 784 (7th Cir. 2022); *but see Pyramid Elec.*, 223 F.3d at 465–66. This court has found turnover orders final even where, as here, the order requires a fixed amount to be paid now but also requires uncertain amounts to be paid in the future. *Laborers' Pension Fund v. Dirty Work Unlimited, Inc.*, 919 F.2d 491, 493–94 (7th Cir. 1990).

In *Dirty Work*, a post-judgment order required a third party to turn over a fixed amount of money to the federal court plaintiff immediately, based on the citation to discover assets process. *Id.* But it also "provided for additional recovery of amounts owed" to the defendant by the third party, which were contingent on the outcome of state court litigation between the defendant and third party. *Id.* at 493. This court held that the order was final under § 1291 because there was nothing left to be done in the district court. *Id.* at 493–94. Any "unresolved element" in the turnover order was only contingent on litigation in other forums, making the turnover order final and appealable. *Id*.

This case is like *Dirty Work*. Like there, the February 11, 2025 Turnover Order requires Innovative, among others, to pay a fixed amount immediately, based on the citation to

---

[4] Oral Argument, November 12, 2025, at 13:47–14:21 (ca7-ecf.sso.dcn/sound/storagelinkdir/oralArguments/2025/ch.25-1419.25-1419_11_12_2025.mp3).

discover assets process. But the order also provides that additional amounts must be paid when Innovative acquires funds or assets on Premium's behalf after the date of the turnover order.

Although Innovative's collections and future payments to MedLegal pursuant to this turnover order depend on the outcome of worker's compensation and personal injury cases, litigation in other fora requires nothing more from the district court. So this February 11, 2025 Turnover Order is final just as the turnover order in *Dirty Work* was.

But there is one distinction to consider. The turnover order in *Dirty Work* was based on a final judgment in the underlying litigation. *Id.* at 492. The February 11, 2025 Turnover Order is partially based on a final judgment in the underlying litigation—MedLegal's judgment against Premium—and partially based on a non-final judgment in the post-judgment proceedings—the ruling that MedLegal's claim was superior to Bedi's purported claim.

Although it is odd to find a turnover order final even when it is partially based on a non-final order, this is a distinction without a difference. Whatever is left to be done in the district court as to the validity of Bedi's claim—although it could moot the order ruling on priority, *see supra* II.A.1.—could not alter or moot this turnover order. MedLegal's right to immediately collect on the turnover order would remain unaffected whether Bedi has a valid claim or not. The February 11, 2025 Turnover Order is thus final and appealable under § 1291. *HSBC Bank*, 793 F.3d at 775–76 (7th Cir. 2015).

*      *      *

Congress limited appellate jurisdiction to the "final decision" of the district court. 28 U.S.C. § 1291. The district court's January 7, 2025 Order granting partial summary judgment and its February 11, 2025 Order denying Bedi's motion to alter or amend that prior order were not final. But the February 11, 2025 Turnover Order was final. Therefore, we have appellate jurisdiction under § 1291.

### III. *Rooker-Feldman* Doctrine

The next question is whether the *Rooker-Feldman* doctrine bars the district court from exercising jurisdiction. The doctrine recognizes that the Supreme Court alone has "appellate jurisdiction to review and modify or reverse a state-court judgment; the lower federal courts do not." *Mitchell v. Durham Enters., Inc.*, 99 F.4th 978, 986 (7th Cir. 2024) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005)). It "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Mitchell*, 99 F.4th at 986 (quoting *Exxon*, 544 U.S. at 284).

Because *Rooker-Feldman* applies narrowly, the Supreme Court has held that, to be a state-court loser, the party against whom the doctrine is invoked must have been a party to the underlying state-court proceeding. *Mitchell*, 99 F.4th at 986; *Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("The *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment."). This is because a federal litigant who was "absent from the underlying litigation and judgment in state

court is 'in no position to ask [the Supreme Court] to review the state court's judgment' but instead is 'merely seek[ing] to litigate its … case for the first time' in federal court." *Mitchell*, 99 F.4th at 986 (citation omitted). MedLegal was not a party to Bedi's state-court proceeding or the state-court judgment against Premium, so *Rooker-Feldman* was no bar.

Bedi rests his argument on a footnote in *Lance* in which the Supreme Court declined to address "whether there are *any* circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not named in an earlier state proceeding." *Id*. (quoting *Lance*, 546 U.S. at 465 n.2). To illustrate the open question, the Court provided an example: "e.g., where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent." *Id*. (quoting *Lance*, 546 U.S. at 465 n.2).

In *Mitchell*, we acknowledged "[t]he Court's example makes sense considering the logic of the doctrine: a decedent's estate simply steps into the decedent's shoes and like the decedent cannot seek de facto appellate review of a state-court judgment in district court." *Id*. "But this example doesn't remotely fit the procedural facts of this case." *Id*. In arguing that it has a superior interest in Premium's assets relative to Bedi's purported interest, "[MedLegal] is not stepping into the shoes of [Premium]" against Bedi. *Id*.

Bedi counters that "MedLegal is stepping into the shoes of Premium to collect assets of Premium and any assets owed Premium from third parties." Yet this argument fails to grasp the distinction between asserting Premium's rights against a third-party debtor, which MedLegal is doing based on its own federal court money judgment, and asserting Premium's

rights against Bedi to undo Bedi's money judgment, which MedLegal is not doing.

If there is room for such an exception in future cases, it is not invoked by a party with a competing claim to the state-court loser's assets based on a separate federal court money judgment. Because MedLegal was not a state-court loser, we do not reach the remaining elements of the test.[5] The district court's ruling, therefore, faced no jurisdictional bar.

## IV. Priority

On the merits, we can be brief. The issue is whether, under Illinois state law, MedLegal's lien against Premium's assets is superior to Bedi's purported interest. We do not decide this question. Even if Bedi had advanced persuasive arguments in his opening and reply briefs, he did not raise them in the district court. In its motion for partial summary judgment, MedLegal advanced arguments under Illinois state law on the issue of priority. *See supra* I.C. Bedi failed to respond.

---

[5] Another source of confusion is Bedi's failure to distinguish between *Rooker-Feldman* and issue preclusion. *Exxon*, 544 U.S. at 283 (*Rooker-Feldman* does not "supersed[e] the ordinary application of preclusion law."). Bedi raised a preclusion defense under the Full Faith and Credit Act, 28 U.S.C. § 1738, in his motion to alter and amend the judgment (albeit in a cursory and undeveloped fashion). But he failed to raise it again in his opening appellate brief. Because preclusion is not jurisdictional, *Exxon*, 544 U.S. at 293 ("Preclusion, of course, is not a jurisdictional matter."), Bedi waived the argument on appeal, *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023) ("An appellant may waive a non-jurisdictional issue or argument … by failing to raise it at all in the party's opening brief."). In any event, the Illinois Appellate Court order and opinion, which Bedi submitted after oral argument before us, showed that even the state court believed nothing decided in the state forum prevented or precluded the district court from ruling on priority as it did.

Instead, Bedi risked his entire litigation strategy on the *Rooker-Feldman* doctrine. That choice did not pay off. At oral argument, we asked why Bedi's arguments on the merits were not waived. Stopping short of fully conceding the point, Bedi's counsel acknowledged that Bedi did not make merit-based arguments in the district court. He nevertheless asked that the issue be decided based on the record before us and based on the "undisputed" legal proposition that the "first in time has priority."[6] But that is not how waiver works.

Notwithstanding the record, Bedi failed to raise these arguments in the district court. He thus waived them on appeal. *Bradley*, 59 F.4th at 897 (appellants waive arguments "by failing to raise the issue or argument in the district court").

### V. Conclusion

Because the February 11, 2025 Turnover Order was a final decision under 28 U.S.C. § 1291, we have appellate jurisdiction. And because MedLegal was not a state-court loser, and no purported exception applies, the *Rooker-Feldman* doctrine did not bar the district court's jurisdiction. As to the merits on priority, Bedi waived his arguments by not raising them in the district court, so we do not reach the question of Illinois state law on appeal.

AFFIRMED.

---

[6] Oral Argument, November 12, 2025, at 8:45–9:01, 9:36–10:56 (ca7-ecf.sso.dcn/sound/storagelinkdir/oralArguments/2025/ch.25-1419.25-1419_11_12_2025.mp3).